IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC., *Plaintiff*, v. ALKEM LABORATORIES LTD., *Defendant*. | Civil Action No. 20-cv-1094 |

MEMORANDUM OPINION

**GOLDBERG, J.**                                                                                    January 31, 2022

This is an action for patent infringement in which Plaintiff Azurity Pharmaceuticals, Inc. alleges that a drug described in an Abbreviated New Drug Application ("ANDA"), filed by Defendant Alkem Laboratories Ltd., infringes three of Plaintiff's patents: U.S. Patent Nos. 10,493,028 (the "'028 patent"), 10,688,046 (the "'046 patent"), and 10,959,948 (the "'948 patent"). Presently before me is Defendant's Motion for Judgment on the Pleadings seeking a ruling that its product does not infringe two of those patents, '028 and '046. In support of its Motion, Defendant points to an alleged disavowal by the applicant for those patents in the prosecution history. For the reasons explained below, I will deny the Motion.

**I.     FACTS**

   **A.     The Asserted Claims**

The '028 and '046 patents are not materially different for purposes of the present Motion. Thus, for the sake of brevity, I will limit my discussion to the '028 patent. That patent, titled "Composition and Method for Vancomycin Oral Liquid," describes a liquid solution of the antibiotic vancomycin. Its one independent claim states the following:

1

> 1. A non-sterile stable liquid formulation formulated for oral administration, consisting of:
>
>> (a) 0.1-0.4% w/v anhydrous citric acid,
>> (b) water,
>> (c) 0.1-0.3% w/v sucralose,
>> (d) 0.01-0.1% w/v of a flavoring agent,
>> (e) 0.08-0.2% w/v sodium benzoate,
>> (f) 0.0001-0.0003% w/v of a dye, and
>> (g) vancomycin hydrochloride,
>
> wherein the non-sterile stable liquid formulation is homogenous and stable for at least 30 days at ambient and refrigerated temperature conditions and has a pH of 2.5-4.5, and wherein the concentration of vancomycin in the solution is 25-50 mg/ml.

('028 at 44.)

### B. The Alleged Disavowal

Defendant claims that the applicant for the '028 patent disavowed certain subject matter during its prosecution. Specifically, Defendant points to arguments the applicant made to distinguish prior art reference U.S. Patent Application No. 2016/0101147 ("Palepu").

Palepu, like the asserted claim, describes a liquid solution of vancomycin, but differs in that its solution contains, among other ingredients, a polar solvent such as propylene glycol. According to Defendant's reading of the prosecution history for the '028 patent, the applicant represented to the Patent Office that the claimed invention was not obvious in light of Palepu because the claimed invention did not contain propylene glycol. Defendant points to numerous excerpts from the prosecution history, but the following is most illustrative:

> Without conceding the correctness of the rejection, and for the sole purpose of expediting prosecution, Applicant has amended claim 1 to recite "A non-sterile liquid formulation formulated for oral administration, **consisting of** [a-f and vancomycin hydrochloride]." As amended, claim 1 and claims dependent therefrom do not consist of ingredients other than a-f and vancomycin hydrochloride.
>
> …

> Palepu discloses liquid vancomycin-containing compositions that include (a) vancomycin …, (b) a polar solvent comprising propylene glycol, polyethylene glycol, or mixtures thereof, (c) lactic acid, … and optionally (d) a pH adjustor. … Palepu emphasizes that it is the interaction/combination of its polar solvent (e.g. propylene glycol) and lactic acid … that gives the solutions long-term stability. … At least for this reason, the skilled artisan would not have had a reasonable expectation for success in making a stable oral vancomycin solution without the polar solvents used in Palepu. …

(U.S. Patent Application No. 15/791,717, Applicant Arguments/Remarks Made in an Amendment, p. 7, filed June 13, 2019 (bolding in original).)[1]

### C. The Accused Product

The accused product is a drug described in ANDA 214913. Like the claimed invention, it is a liquid solution of vancomycin, and the two formulations have several ingredients in common. However, the list of ingredients in the ANDA differs from the list of ingredients in the asserted claim in three ways material to the present Motion: (1) sodium benzoate is present in the claim but absent from the ANDA; (2) methyl paraben and ethyl paraben are absent from the claim but present in the ANDA; and (3) propylene glycol is absent from the claim but present in the ANDA. (ECF No. 60-1, Exhibit A, at 4 (sealed document).)

Based on these differences, and the applicant's alleged disavowal of propylene glycol, Defendant now asks me to find that, as a matter of law, its product cannot infringe the asserted claims.

### II. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings will be granted only if "the movant clearly establishes that no material issue of fact remains to be

---

[1] The parties do not dispute that these statements apply to the '046 patent as well. See Omega Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1333 (Fed. Cir. 2003) ("[P]rosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications.").

resolved and that [the movant] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). In deciding the motion, the court must accept the nonmoving party's factual allegations as true and view them in the light most favorable to the nonmoving party. Id. This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

"[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks omitted). I may consider the asserted patents, their prosecution histories, and Defendant's ANDA because these documents are incorporated into the pleadings or are public records. See AstraZeneca Pharm. LP v. Apotex Corp., 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012) (considering an ANDA at the pleadings stage); Amgen Inc. v. Coherus BioSciences Inc., 931 F.3d 1154, 1159 (Fed. Cir. 2019) (considering prosecution history at the pleadings stage).

### III. ANALYSIS

"A determination of infringement is a two-step process. The court must first correctly construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods." Seachange Int'l, Inc. v. C-COR, Inc., 413 F.3d 1361, 1377 (Fed. Cir. 2005). "To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." Cephalon, Inc. v. Watson Pharms., Inc., 707 F.3d 1330, 1340 (Fed. Cir. 2013).

Defendant first notes that its accused formulation omits one claimed ingredient and adds three unclaimed ones, which, Defendant contends, precludes literal infringement. Second, Defendant reads the prosecution history for the '028 patent as disavowing formulations containing

one of those unclaimed ingredients, namely propylene glycol. Thus Defendant asserts that, because propylene glycol was disavowed, the accused product, which contains propylene glycol, cannot infringe under the doctrine of equivalents. I consider each of these points below.

The asserted claim quoted above sets out an ingredient list introduced by the phrase "consisting of." The parties agree "'[c]onsisting of' is a term of patent convention meaning that the claimed invention contains only what is expressly set forth in the claim" and "excludes any element[,] step, or ingredient not specified in the claim." Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp., 831 F.3d 1350, 1358 (Fed. Cir. 2016). Therefore, the claimed invention is limited to formulations that contain all listed ingredients without any unlisted ingredients. In particular, methyl paraben, ethyl paraben, and propylene glycol, which are present in the accused product, are not listed in the asserted claim. Sodium benzoate, which is recited in the claim, is absent from the accused product. Defendant argues these differences preclude a finding that its formulation literally infringes the claim.

Next, Defendant addresses the possibility that Plaintiff may attempt to prove infringement through the doctrine of equivalents. "Under the doctrine of equivalents, [a patentee] may lay claim to those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." Conoco, Inc. v. Energy & Env't Int'l, L.C., 460 F.3d 1349, 1363 (Fed. Cir. 2006) (quotation marks omitted). "Infringement under the doctrine of equivalents is a question of fact…." Intendis GMBH v. Glenmark Pharms. Inc., USA, 822 F.3d 1355, 1360 (Fed. Cir. 2016). Therefore, if Plaintiff shows through factual development that the omission of sodium benzoate, the addition of methyl paraben and ethyl paraben, and the addition of propylene glycol are insubstantial differences, Plaintiff could potentially prove infringement under the doctrine of equivalents.

However, Defendant contends Plaintiff is prevented from relying on the doctrine of equivalents due to argument-based prosecution history estoppel. "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 170 F.3d 1373, 1376 (Fed. Cir. 1999). "To determine what subject matter has been relinquished, an objective test is applied, inquiring whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." Id. at 1377 (quotation marks omitted).

Applying the above test to the applicant's statements in the prosecution history, Defendant argues the applicant distinguished the claimed invention from Palepu based on the absence of propylene glycol and therefore disavowed this ingredient. Specifically, Defendant points to statements that the claimed invention "do[es] not consist of ingredients other than a-f and vancomycin hydrochloride" and that "the skilled artisan would not have had a reasonable expectation for success in making a stable oral vancomycin solution without the polar solvents [e.g., propylene glycol] used in Palepu." Defendant argues these statements estop Plaintiff from claiming formulations containing propylene glycol—such as the accused product—as equivalents. Thus, Defendant concludes, because there is no literal infringement, and no infringement under the doctrine of equivalents, it is entitled to a judgment in its favor.

Plaintiff offers numerous arguments in response, but, at this early stage of the case, I find it necessary to consider only one of these arguments. While Plaintiff acknowledges that ingredient lists introduced with "consisting of" are closed to unlisted ingredients, Plaintiff notes there is a narrow exception for unclaimed aspects of the accused product that are "unrelated to the invention." Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004). Plaintiff contends

that, if given the opportunity to present expert testimony, it will prove that the propylene glycol in the accused product is unrelated to the claimed invention and therefore does not avoid infringement. Several cases are instructive on this issue.

In Norian, the patent disclosed a bone-repairing kit that "consist[ed] of" listed chemicals, while the accused product was a kit that included the same chemicals plus a mixing spatula. Id. at 1331. Although the spatula was not recited in the claimed ingredient list, infringement was not avoided because "the spatula ha[d] no interaction with the chemicals, and [was] irrelevant to the invention." Id. at 1332. Similarly, in Conoco v. Energy and Environmental International, the presence of an unlisted denaturing agent in a formulation containing alcohol did not preclude infringement because "impurities that a person of ordinary skill in the relevant art would ordinarily associate with a component on the 'consisting of' list do not exclude the accused product or process from infringement," even if those impurities are intentionally added. 460 F.3d at 1360.

By contrast, in Shire Dev., LLC v. Watson Pharms., Inc., 848 F.3d 981 (Fed. Cir. 2017), an unlisted ingredient precluded infringement because it was related to the invention. There, the claimed invention described a material made from listed ingredients, all of which were hydrophilic ("having an affinity to water"). Id. at 985-86. The analogous material in the accused product was also predominantly hydrophilic but contained, in addition, an unclaimed ingredient that was lipophilic ("resists dissolving in water"). Because the unlisted ingredient's lipophilic character "structurally and functionally relate[d] to the invention," it was not unrelated. Id. at 986. This was true even though the unlisted ingredient had an effect opposite that of the claimed invention and its effect was "overwhelmed" by that of the claimed ingredients. Id.

Importantly, the above cases were all decided after a full trial, providing an opportunity to factually develop the purported unrelatedness of the unlisted ingredient. In Norian, the critical fact

7

was that the spatula did not interact with the chemicals it was used to mix. 363 F.3d at 1332. In Conoco, the decision rested on "the testimony of persons of ordinary skill in the art … that [the impurity] ha[d] little to no effect on the … invention and [was] normally associated with industrial alcohols to reduce tax liability." 460 F.3d at 1361. And in Shire, the deciding feature was that the unlisted ingredient was lipophilic. 848 F.3d at 986. Because the determination of unrelatedness is factual, Plaintiff argues, it cannot be decided at the pleadings stage.

Defendant responds with two points. First, Defendant urges that Norian's exception for unrelated "aspects" of a product is inapplicable to ingredients in a chemical mixture, citing Kim v. Earthgrains Co., No. 01-cv-3895, 2010 WL 625220 (N.D. Ill. Feb. 18, 2010). The district court in Kim reasoned that since Norian took the phrase "consisting of" to "limit[] the kit to the claimed chemicals and no other chemicals," it follows that "a 'consisting of' claim that is a chemical formula cannot contain additional chemicals." Id. at *5.

But I disagree that Norian's exception for aspects unrelated to the invention is categorically inapplicable to ingredients in a chemical mixture. Read in context, it is unclear whether the statement in Norian that "no other chemical can be included in the composition" states a general rule without exception or a conclusion from the full factual record available in that case. Norian, 363 F.3d at 1331. Rather, the Norian court had no reason to consider unlisted chemicals because none were present. Further, it was unnecessary to the outcome in Kim to decide whether unlisted chemicals were categorically excluded, and the Federal Circuit did not repeat that broad statement in affirming the district court. See Kim v. Earthgrains Co., 451 F. App'x 922, 925 (Fed. Cir. 2011). And, if "consisting of" could admit no exceptions for chemical mixtures, there would be no reason for the Conoco court to analyze whether the denaturing agent was a common impurity or for the Shire court to consider testimony that the unlisted component was lipophilic.

I recognize it is a "rare exception" that an ingredient is wholly unrelated to the mixture containing it. Shire, 848 F.3d at 984. Nevertheless, the question remains a factual one, and, at this early stage, all inferences weigh in Plaintiff's favor as the nonmoving party. Rosenau, 539 F.3d at 221. While Plaintiff may face a difficult burden to prove it has met the prerequisites for the Norian exception, evidence could establish that the propylene glycol in Defendant's formulation is unrelated to Plaintiff's invention.

Defendant next argues that even if additional ingredients in the accused product could be unrelated to the invention, its product still cannot literally infringe because the accused product omits the claimed ingredient sodium benzoate. Defendant reasons that because there can be no literal infringement, Plaintiff's only path is through the doctrine of equivalents, which, once again, is precluded by Defendant's estoppel argument and the unclaimed presence of propylene glycol.

However, as Plaintiff points out, infringement under the doctrine of equivalents is "established on a limitation-by-limitation basis" in which "the accused device must be shown to include an equivalent for each literally absent claim limitation." Dawn Equip. Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1015 (Fed. Cir. 1998). Thus, equivalents need only be shown for limitations "not literally satisfied." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). At this early stage of the litigation, the undisputed facts do not exclude the possibility that the accused product could satisfy the absence of unlisted ingredients literally while satisfying the presence of sodium benzoate as an equivalent.

Taking all inferences in Plaintiff's favor as the nonmoving party, at this stage of the case I cannot conclude that the undisputed facts preclude infringement. I need not reach Plaintiff's other arguments. My ruling here is limited to the standards under Rule 12(c) and I thus do not conclusively decide at this time whether prosecution history estoppel applies and, if so, the extent

of any such estoppel. Those questions may be resolved, if appropriate, at a later stage of the litigation, after the development of the evidentiary record.

## IV.     CONCLUSION

For the reasons set forth above, I will deny Defendant's Motion for Judgment on the Pleadings.

An appropriate order follows.