# Exhibit A

Redacted In Its Entirety

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1094 (MSG) |
| | ) | |
| ALKEM LABORATORIES LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF AZURITY PHARMACEUTICALS, INC.'S OBJECTIONS
AND RESPONSES TO DEFENDANT ALKEM LABORATORIES
LTD.'S SECOND SET OF INTERROGATORIES (NOS. 10-23)**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure and applicable Local Rules, Plaintiff Azurity Pharmaceuticals, Inc. ("Azurity" or "Plaintiff"), by and through its counsel, hereby objects and responds as follows to Defendant Alkem Laboratories Ltd.'s ("Alkem" or "Defendant") Second Set of Interrogatories (Nos. 10-23) ("Interrogatories").

## PRELIMINARY STATEMENT

The following responses are made solely for the purpose of, and in relation to, this action. Each response is provided subject to all appropriate objections (including, without limitation, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any statement contained herein if the statement were made by a witness present and testifying in court.  All such objections and grounds are therefore reserved and may be interposed at the time of trial.

The following responses are based on the facts and information presently known and available to Azurity.  Discovery, investigation, research, and analysis are ongoing in this case and may disclose the existence of additional facts, add meaning to known facts, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, and changes to these

1

responses.  Azurity reserves the right to change or supplement these responses as additional facts are discovered, revealed, recalled, or otherwise ascertained.  Azurity's objections as set forth herein are made without prejudice to its rights to assert any additional or supplemental objections.

## GENERAL OBJECTIONS

Azurity makes the following General Objections to Alkem's Interrogatories.  These General Objections are incorporated by reference into Azurity's responses to each individual interrogatory, to the extent applicable, whether or not stated in any individual response.  By providing a specific response to any interrogatory, Azurity does not waive or otherwise limit these General Objections.  Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all these General Objections to each and every response.  Azurity reserves all objections and other questions regarding the competency, relevance, authenticity, materiality, privilege, or admissibility of such documents or materials as evidence in this suit or any other proceeding, action, or trial.

1.     None of Azurity's objections or responses is an admission as to the relevance or admissibility of any document or information, or to the truth or accuracy of any statement or characterization contained in any interrogatory.

2.     Azurity incorporates by reference, in its entirety and as relevant and applicable, its General Objections as set forth in its Objections and Responses to Alkem's First Set of Requests for Production of Documents and Things (Nos. 1-99), Objections and Responses to Alkem's First Set of Interrogatories (Nos. 1-9), and Objections and Responses to Alkem's First Set of Requests for Admission (Nos. 1-27).

3.     Azurity objects to each interrogatory, definition, and instruction to the extent it purports to impose obligations exceeding or inconsistent with obligations under the Federal Rules

of Civil Procedure, the Delaware Local Rules, any other applicable laws or rules, or any court order in this case.

4.      Azurity objects to each interrogatory, definition, and instruction to the extent it seeks information that is not in Azurity's possession, custody, or control.

5.      Azurity objects to each interrogatory, definition, and instruction to the extent it seeks information that is neither relevant to any claim or defense raised in this litigation, nor proportional to the needs of the case.

6.      Azurity objects to each interrogatory, definition, and instruction to the extent it purports to seek information that cannot be found in the course of a reasonable search.

7.      Azurity objects to each interrogatory, definition, and instruction to the extent it is vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the information sought.

8.      Azurity objects to each interrogatory, definition, and instruction to the extent it seeks proprietary business information, trade secrets, or other confidential information, including information that is subject to a confidentiality agreement or protective order.

9.      Azurity objects to each interrogatory, definition, and instruction to the extent it is premature in view of any Federal Rule of Civil Procedure, any Delaware Local Rule, any other applicable laws or rules, or any scheduling order in this matter.

10.     Azurity objects to each interrogatory, definition, and instruction to the extent it is not properly limited in subject matter, scope, and/or time; employs vague, undefined, or uncertain terms or phrases; and/or calls for investigations or activities, the costs and burdens of which are unreasonable under the circumstances or outweigh the likely benefit in resolving the issues of this action.

11.     Azurity objects to each interrogatory, definition, and instruction to the extent it purports to require Azurity to identify, describe, or state "any," "each," or "all" information as overly broad and unduly burdensome, except to the extent that such interrogatory seeks reasonably narrow, non-cumulative information.

12.     Azurity objects to each interrogatory, definition, and instruction to the extent it seeks discovery of information not limited to the Patents-in-Suit, *i.e.*, United States Patent Nos. 10,493,028 ("'028 Patent"), 10,688,046 ("'046 Patent"), and 10,959,948 ("'948 Patent").

13.     Azurity objects to each interrogatory, definition, and instruction to the extent it is unreasonably cumulative and/or duplicative of other discovery requests, or seeks information that is obtainable from some other source that is more convenient, less burdensome, and/or less expensive.

14.     Azurity objects to each interrogatory, definition, and instruction to the extent it improperly requires Azurity to draw legal conclusions or opinions.

15.     Azurity objects to each interrogatory, definition, and instruction to the extent it is overly broad; fails to reasonably identify or describe with particularity the information sought; is unduly burdensome; seeks information for time periods beyond those relevant to the issues in this litigation or fails to identify the relevant time period for information requested; or is posed for improper purpose(s), including without limitation, embarrassment, undue annoyance, harassment, oppression, delay, abuse of process, and/or increase of the expense of litigation.

16.     Azurity objects to each interrogatory, definition, and instruction to the extent it seeks information protected by the attorney-client privilege, work-product immunity, or any other applicable statutory or common law privilege, prohibition, limitation, or immunity from disclosure. Azurity will not disclose such privileged information, and any inadvertent disclosure thereof shall not

4

be deemed a waiver of any privilege, immunity, prohibition, or limitation with respect to such information.  Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation.  Azurity reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

17.     Azurity objects to each interrogatory, definition, and instruction to the extent it seeks information or material obtainable from some other source that is more convenient, less burdensome, less expensive, and/or in the public domain.  Azurity objects that responsive information sought may be derived or ascertained from the following sources, to which Alkem has the same or better access than Azurity: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Alkem.  Information and/or material that is equally accessible to Alkem as it is to Azurity is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such publicly available information and/or material on Azurity.  Consequently, Azurity should not be required to bear the burden associated with disclosing any such publicly available information.

18.     Azurity objects to each interrogatory, definition, and instruction to the extent it seeks confidential or proprietary information of a non-party, or information that is covered by a confidentiality agreement or subject to a confidentiality obligation between Azurity and a non-party, or which is protected from discovery by any right to privacy or any other applicable privilege.  Azurity will not provide such information without the consent of the relevant non-party, or a court order compelling disclosure.

19.     Azurity objects to each interrogatory, definition, and instruction to the extent it purports to request production of confidential information protected by any law or regulation, including but not limited to the Health Insurance Portability and Accountability Act of 1996.

20.     Azurity objects to each interrogatory, definition, and instruction to the extent it seeks information shielded from disclosure by any applicable foreign or domestic privacy laws.  Except as set forth in Azurity's specific responses below, Azurity is not currently aware of such obligations that would affect Azurity's ability to respond to Alkem's interrogatories.  However, Azurity expressly reserves the right to object and withhold information on this basis should it become aware of such obligations.

21.     Azurity objects to each interrogatory, definition, and instruction to the extent it purports to request information related to sales, promotion, or marketing of Azurity's products outside of the United States, as such information is not relevant to the issues raised by the present litigation.

22.     Azurity objects to each interrogatory, definition, and instruction to the extent it relates to the production of documents and not the provision of answers to interrogatories.

23.     Azurity's partial response to any interrogatory is not a waiver of its objection or right to object to the interrogatory, or any part thereof, or to any additional, supplemental, or further interrogatory or part thereof.

24.     Azurity objects to each interrogatory to the extent it is directed at multiple issues and thus constitutes multiple interrogatories under the guise of a single interrogatory.  By responding to these interrogatories, Azurity in no way waives its right to object to the number of interrogatories, including subparts, which Alkem has propounded or will propound in this case.

25.     The subject matter of Alkem's interrogatories is under continuing investigation. Azurity expressly reserves the right to use or rely upon information not disclosed in response to the interrogatories if such information is uncovered during the course of its ongoing investigation and then disclosed to Alkem.  Azurity will respond to Alkem's interrogatories based on the best of its present knowledge, information, and belief.  Further, Azurity expressly reserves the right pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(e) to change or modify any of the following responses as it becomes aware of new knowledge relevant to the interrogatories and/or as additional facts are ascertained, legal research is completed, or contentions are made. Azurity also reserves the right to supplement its responses to each interrogatory that is deemed premature, not relevant, or beyond the scope of discovery, as set forth by the rules and orders of this Court.  Azurity further reserves the right to make any use of, or introduce in any hearing or at trial, information included as part of such supplemental production.

## OBJECTIONS TO ALKEM'S DEFINITIONS / INSTRUCTIONS

1.      Insofar as Alkem incorporates by reference the Definitions in its First Set of Requests for the Production of Documents and Things (Nos. 1-99), Azurity likewise incorporates by reference its objections to such definitions.

2.      Azurity objects to Alkem's "Instructions" to the extent they attempt to impose burdens and requirements upon Azurity that exceed or differ from the requirements of the Federal Rules of Civil Procedure; the Delaware Local Rules; the District of Delaware's Default Standard for Discovery, Including Discovery of Electronically Stored Information; the Court's Scheduling Order; the Court's Protective Order; or any other applicable rule.

3.     Azurity objects to Alkem's Instruction No. 1 as overly broad, unduly burdensome, and not proportional to the needs of the case. Azurity's responses to Alkem's interrogatories are made on the basis of information in Azurity's possession, custody, or control.

4.     Azurity objects to Alkem's Instruction No. 2 as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Azurity's responses to Alkem's interrogatories are made subject to the relevant time period and/or geographic scope.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 10:

If Plaintiff contends that any of the following amendments were *not* made for reasons "substantial[ly] . . . relating to patentability," as this term is used in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366–67 (Fed. Cir. 2003) (*en banc*), for each such amendment explain the basis for such contentions, including but not limited to, whether and why (1) the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question; (2) the equivalent was unforeseeable at the time of the application; or (3) there was some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent:

5-29-2018 Amendment of Claim 1 of Application No. 15/126,059;

2-11-2019 Amendment of Claims 16, 20 & 23-24 of Application No. 15/126,059;

8-15-2019 Amendment of Claims 16, 20 & 23-24 of Application No. 15/126,059;

10-4-2019 Supplemental Amendment of Claims 16, 20 & 24 of Application No. 15/126,059;

7-28-2020 Preliminary Amendment of Application No. 16/941,400;

2-15-2019 Amendment to Claim 1 in Application No. 15,791,717;

6-13-2019 Amendment to Claim 1 in Application No. 15,791,717; and

11-6-2019 Preliminary Amendment of Application No. 16/676,325.

### RESPONSE TO INTERROGATORY NO. 10:

Azurity incorporates its Preliminary Statement, General Objections, and Objections to Alkem's Definitions / Instructions as though fully set forth herein. Azurity objects to this

interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  In particular, Azurity objects to this interrogatory on the grounds that it is not relevant to any claim or defense currently in this action and not proportional to the needs of the case, including (without limitation) to the extent that it purports to seek Azurity's contentions regarding whether various amendments (to at least 73 claims) were made for a substantial reason related to patentability, even though Alkem has not contended that the amendment is narrowing despite having the burden on this issue.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (*en banc*) ("The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim.  If the amendment was not narrowing, then prosecution history estoppel does not apply.  But if the accused infringer establishes that the amendment was a narrowing one, then the second question is whether the reason for that amendment was a substantial one relating to patentability.") (internal citations omitted).  Azurity further objects to this interrogatory insofar as it appears to conflate various aspects of the amendment-based estoppel inquiry.  *Id.* at 1366-68.

Azurity further objects to this interrogatory on the grounds that it is not relevant to any claim or defense currently in this action and not proportional to the needs of the case to the extent it encompasses claims other than the Asserted Claims.  Azurity further objects to this interrogatory as vague and ambiguous, at least insofar as it generally refers to various amendments by date without identifying the pertinent claim language.  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint

defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity objects to this interrogatory as premature because discovery is still ongoing.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.  Azurity further objects to this interrogatory to the extent it purports to impose obligations exceeding or inconsistent with the provisions of the Scheduling Order (and updates thereto).  Azurity further objects to this interrogatory to the extent it seeks to improperly shift Alkem's burden of proving amendment-based estoppel to Azurity.  Azurity further objects to this interrogatory to the extent it improperly requires Azurity to draw legal conclusions or opinions.  Azurity further objects to this interrogatory to the extent it is compound and contains multiple discrete subparts (e.g., to the extent it refers to eight amendments encompassing at least 73 claims), and therefore exceeds the number of interrogatories permitted in this action.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: As the accused infringer, Alkem bears the burden of establishing the allegedly narrowing amendment.  Alkem's general reference to various amendments (covering at least 73 claims) does not satisfy this burden.  Therefore, this interrogatory inappropriately attempts to shift Alkem's burden by requesting rebuttal evidence in advance of any established theory by Alkem for why amendment-based estoppel should apply.  Moreover, Azurity's positions with respect to amendment-based estoppel are the subject of expert testimony that will be provided in accordance with the Federal Rules of Civil Procedure and Scheduling Order in this case.

Azurity expressly reserves the right to revise, clarify, and/or supplement its answer to this interrogatory in the event that Alkem clearly identifies which amendments it contends are narrowing.  Further, Azurity is engaged in an ongoing investigation of facts pertaining to this issue and expressly reserves the right to revise, clarify, and/or supplement its answer to this interrogatory in the future, including via expert discovery.

**INTERROGATORY NO. 11:**

If Plaintiff contends that inclusion of propylene glycol set forth in Table 3.2.P.l-2: Unit Composition of Diluent for Reconstitution of Alkem's ANDA (VANCO000000890) is an "aspect[] unrelated to the invention" of any Asserted Claim, as that term is used in *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321 (Fed Cir. 2004), explain the bases for such contentions, including, but not limited to, how such contentions account for the statements (a. – l.) listed in Alkem's First Set of Requests for Admission No. 1.

**RESPONSE TO INTERROGATORY NO. 11:**

Azurity incorporates its Preliminary Statement, General Objections, and Objections to Alkem's Definitions / Instructions as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  In particular, Azurity objects to this interrogatory on the grounds that it is not relevant to any claim or defense currently in this action and not proportional to the needs of the case, including (without limitation) to the extent it purports to require Azurity to address 13 statements from the prosecution history, including statements from applications other than those that issued as the Patents-in-Suit. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrases "inclusion of propylene glycol set forth in Table 3.2.P.l-2" and "account for."  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work

product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks information that is not known to Azurity and/or outside the scope of Azurity's possession, custody, and control. Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity. Azurity objects to this interrogatory as premature because discovery is still ongoing. Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference. Azurity further objects to this interrogatory to the extent it purports to impose obligations exceeding or inconsistent with the provisions of the Scheduling Order (and updates thereto). Azurity further objects to this interrogatory to the extent it improperly requires Azurity to draw legal conclusions or opinions. Azurity further objects to this interrogatory to the extent it is compound and contains multiple discrete subparts (e.g., to the extent it refers to 13 statements from the prosecution history), and therefore exceeds the number of interrogatories permitted in this action.

Subject to and without waiver of the foregoing objections, Azurity responds that this interrogatory is indecipherably vague and ambiguous. But to the extent a response is required and to the extent understood, Azurity incorporates by reference its Initial Infringement Claim Charts, served on May 14, 2021 (as to the '028 Patent and the '046 Patent) and July 7, 2021 (as to the '948 Patent). Azurity also incorporates by reference its Answering Brief in Opposition to Alkem's

Motion for Judgment on the Pleadings (D.I. 76), filed on August 5, 2021.  Azurity also incorporates by reference the hearing transcript from the January 6, 2022 hearing (D.I. 103).  Azurity also incorporates by reference the Court's Memorandum Opinion and Order Denying Alkem's Motion for Judgment on the Pleadings (D.I. 106; D.I. 107).

Azurity will disclose its Final Infringement Claim Charts according to the Scheduling Order (and updates thereto) in this case.  Azurity expressly reserves the right to further respond to this interrogatory in Final Infringement Claim Charts and during expert discovery, which are explicitly incorporated herein for reference.

Azurity is engaged in an ongoing investigation of facts pertaining to this issue and expressly reserves the right to revise, clarify, and/or supplement its answer to this interrogatory in the future, including via expert discovery.

**INTERROGATORY NO. 12:**

Explain the bases for Plaintiff's contention in D.I. 76, p. 8, that "[t]he propylene glycol in Alkem's ANDA product falls within the literal scope of the claimed flavoring agent—thus, no DOE analysis of infringement with respect to propylene glycol is necessary," including, but limited too, how, if at all, Plaintiff's contention accounts for the statements (a. – l.) listed in Alkem's First Set of Requests for Admission No. 1.

**RESPONSE TO INTERROGATORY NO. 12:**

Azurity incorporates its Preliminary Statement, General Objections, and Objections to Alkem's Definitions / Instructions as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  In particular, Azurity objects to this interrogatory on the grounds that it is not relevant to any claim or defense currently in this action and not proportional to the needs of the case, including (without limitation) to the extent it purports to require Azurity to address 13 statements from the prosecution history, including statements from applications other than those that issued as the Patents-in-Suit.

Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "account for."  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is not known to Azurity and/or outside the scope of Azurity's possession, custody, and control.  Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity objects to this interrogatory as premature because discovery is still ongoing.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference. Azurity further objects to this interrogatory to the extent it purports to impose obligations exceeding or inconsistent with the provisions of the Scheduling Order (and updates thereto). Azurity further objects to this interrogatory to the extent it improperly requires Azurity to draw legal conclusions or opinions.  Azurity further objects to this interrogatory to the extent it is compound and contains multiple discrete subparts (e.g., to the extent it refers to 13 statements from the prosecution history), and therefore exceeds the number of interrogatories permitted in this action.

Subject to and without waiver of the foregoing objections, Azurity responds that this interrogatory is indecipherably vague and ambiguous.  But to the extent a response is required and to the extent understood, Azurity incorporates by reference its Initial Infringement Claim Charts, served on May 14, 2021 (as to the '028 Patent and the '046 Patent) and July 7, 2021 (as to the '948 Patent).  Azurity also incorporates by reference its Answering Brief in Opposition to Alkem's Motion for Judgment on the Pleadings (D.I. 76).  Azurity also incorporates by reference the hearing transcript from the January 6, 2022 hearing (D.I. 103).  Azurity also incorporates by reference the Court's Memorandum Opinion and Order Denying Alkem's Motion for Judgment on the Pleadings (D.I. 106; D.I. 107).

Azurity will disclose its Final Infringement Claim Charts according to the Scheduling Order (and updates thereto) in this case.  Azurity expressly reserves the right to further respond to this interrogatory in Final Infringement Claim Charts and during expert discovery, which are explicitly incorporated herein for reference.

Azurity is engaged in an ongoing investigation of facts pertaining to this issue and expressly reserves the right to revise, clarify, and/or supplement its answer to this interrogatory in the future, including via expert discovery.

**INTERROGATORY NO. 13:**

Explain the bases for any Plaintiff's contention that the vancomycin hydrochloride for oral solution product sold by EDGE PHARMA, LLC, f/k/a Edge Pharmacy Services, LLC ("Accused Edge Formulation") and the subject of Azurity's litigation against EDGE PHARMA, LLC, f/k/a Edge Pharmacy Services, LLC (*e.g.*, *AZURITY PHARMACEUTICALS, INC., f/k/a CutisPharma, Inc., v. EDGE PHARMA, LLC, f/k/a Edge Pharmacy Services, LLC*, Ct of App., 1st Cir., No. 21-1492 (2021) is *not* "essentially a copy" of FIRVANQ® under section 21 U.S.C. § 353b(d)(2)(A), and specifically whether the bases for any such assertions include the presence or absence of propylene glycol from any component of the Accused Edge Formulation (before or after compounding), and/or any component of the "cherry flavor" of the Accused Edge Product.

**RESPONSE TO INTERROGATORY NO. 13:**

Azurity incorporates its Preliminary Statement, General Objections, and Objections to Alkem's Definitions / Instructions as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  In particular, Azurity objects to this interrogatory on the grounds that it is not relevant to any claim or defense currently in this action and not proportional to the needs of the case, including (without limitation) to the extent it purports to seek Azurity's contentions regarding a non-party's product in a different litigation concerning claims of false advertising.  *See Azurity Pharm., Inc. v. Edge Pharma, LLC*, 540 F. Supp. 3d 141, 142 (D. Mass. 2021) ("Plaintiff, a specialty pharmaceutical company, alleges that defendant, a compounding facility, has made false representations on its website in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), and the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A."), *appeal docketed*, No. 21-1492 (1st Cir. July 6, 2021).  Azurity further objects to this interrogatory insofar as it appears to mischaracterize this litigation.  *See id.* at 143-44 ("Plaintiff's Lanham Act claim would require the court to determine whether defendant is violating the FDCA and the FDA's interim policies, including whether defendant's vancomycin hydrochloride product is, as plaintiff alleges, "essentially a copy" of plaintiff's own product.").

Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrases "any Plaintiff's contention that the . . . Accused Edge Formulation . . . is *not* 'essentially a copy' of FIRVANQ®," "the subject of Azurity's litigation against EDGE PHARMA, LLC," "any component of the Accused Edge Formulation (before or after compounding)," and "any component of the "cherry flavor" of the Accused Edge Product."  Azurity further objects to this

interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is not known to Azurity and/or outside the scope of Azurity's possession, custody, and control.  Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further objects to this interrogatory to the extent it seeks the confidential information of a third party.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.  Azurity further objects to this interrogatory to the extent it improperly requires Azurity to draw legal conclusions or opinions. Azurity further objects to this interrogatory to the extent it is compound and contains multiple discrete subparts, and therefore may exceed the number of interrogatories permitted in this action.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity will not provide a response to this interrogatory at least because the requested contentions regarding the Accused Edge Formulation are irrelevant to any claim or defense in this matter.

**INTERROGATORY NO. 14:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 1 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 1.

**RESPONSE TO INTERROGATORY NO. 14:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 1 as though fully set forth herein. Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission." Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation. Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity. Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 1.

**INTERROGATORY NO. 15:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 2 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 2.

**RESPONSE TO INTERROGATORY NO. 15:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 2 as though fully set forth herein. Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission." Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation. Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity. Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 2.

**INTERROGATORY NO. 16:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 3 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 3.

**RESPONSE TO INTERROGATORY NO. 16:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 3 as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission."  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly

reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 3.

## INTERROGATORY NO. 17:

To the extent that Plaintiff answers Alkem's Request for Admission No. 5 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 5.

## RESPONSE TO INTERROGATORY NO. 17:

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 5 as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission."  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the

extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly

reserves the right to respond to this interrogatory in its expert reports and during depositions of its

experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood,

Azurity responds as follows: Azurity refers to and incorporates by reference its Response to

Alkem's Request for Admission No. 5.

**INTERROGATORY NO. 18:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 6 with anything
other than an unqualified admission, explain the bases for Plaintiff's response to Request for
Admission No. 6.

**RESPONSE TO INTERROGATORY NO. 18:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's

Definitions / Instructions, and Objections to Alkem's Request for Admission No. 6 as though fully

set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to

the extent it seeks information that is not related to any claim or defense in this action and is not

proportional to the needs of the case.  Azurity further objects to this interrogatory as vague and

ambiguous as to at least the phrase "anything other than an unqualified admission."  Azurity further

objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the

same information as other discovery or disclosures in this litigation.  Azurity further objects to this

interrogatory to the extent it seeks information protected by the attorney-client privilege, the work

product doctrine, joint defense or common interest privilege, and/or any other applicable privilege,

immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks

information that is available from public sources, more conveniently or less expensively obtained

from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further

objects to this interrogatory as premature to the extent it calls for information in advance of the

applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 6.

**INTERROGATORY NO. 19:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 9 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 9.

**RESPONSE TO INTERROGATORY NO. 19:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 9 as though fully set forth herein. Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission." Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation. Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity. Azurity further

objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 9.

**INTERROGATORY NO. 20:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 11 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 11.

**RESPONSE TO INTERROGATORY NO. 20:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 11 as though fully set forth herein. Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission." Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation. Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained

from another source, or otherwise just as available to Alkem as it is to Azurity. Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery. Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 11.

**INTERROGATORY NO. 21:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 12 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 12.

**RESPONSE TO INTERROGATORY NO. 21:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 12 as though fully set forth herein. Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission." Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation. Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection. Azurity further objects to this interrogatory to the extent it seeks

information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 12.

**INTERROGATORY NO. 22:**

To the extent that Plaintiff answers Alkem's Request for Admission No. 14 with anything other than an unqualified admission, explain the bases for Plaintiff's response to Request for Admission No. 14.

**RESPONSE TO INTERROGATORY NO. 22:**

Azurity incorporates its Preliminary Statement, General Objections, Objections to Alkem's Definitions / Instructions, and Objections to Alkem's Request for Admission No. 14 as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case.  Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrase "anything other than an unqualified admission."  Azurity further objects to this interrogatory as unreasonably cumulative or duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege,

immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity refers to and incorporates by reference its Response to Alkem's Request for Admission No. 14.

**INTERROGATORY NO. 23:**

To the extent that Plaintiff claims Alkem's ANDA Product infringes any Asserted Claim through the doctrine of equivalents, explain the basis for any such claim, including, but not limited to, how the limitation(s) in or absent from Alkem's ANDA Product are insubstantially different from limitation(s) in or absent from the Asserted Claims, and how the function, way, and result of limitation(s) in or absent from Alkem's ANDA Product are the same as the function, way, and result of limitation(s) in or absent from the Asserted Claims.

**RESPONSE TO INTERROGATORY NO. 23:**

Azurity incorporates its Preliminary Statement, General Objections, and Objections to Alkem's Definitions / Instructions as though fully set forth herein.  Azurity objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information that is not related to any claim or defense in this action and is not proportional to the needs of the case. Azurity further objects to this interrogatory as vague and ambiguous as to at least the phrases "limitation(s) in or absent from Alkem's ANDA Product" and "limitation(s) in or absent from the Asserted Claims."  Azurity further objects to this interrogatory as unreasonably cumulative or

duplicative to the extent it seeks the same information as other discovery or disclosures in this litigation.  Azurity further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, joint defense or common interest privilege, and/or any other applicable privilege, immunity, or protection.  Azurity further objects to this interrogatory to the extent it seeks information that is not known to Azurity and/or outside the scope of Azurity's possession, custody, and control.   Azurity further objects to this interrogatory to the extent it seeks information that is available from public sources, more conveniently or less expensively obtained from another source, or otherwise just as available to Alkem as it is to Azurity.  Azurity objects to this interrogatory as premature because discovery is still ongoing.  Azurity further objects to this interrogatory as premature to the extent it calls for information in advance of the applicable deadlines set by the Court or agreed to by the parties in this action, in particular to the extent it prematurely calls for information that is the subject of expert discovery.  Azurity expressly reserves the right to respond to this interrogatory in its expert reports and during depositions of its experts, which are explicitly incorporated herein for reference. Azurity further objects to this interrogatory to the extent it purports to impose obligations exceeding or inconsistent with the provisions of the Scheduling Order (and updates thereto). Azurity further objects to this interrogatory to the extent it improperly requires Azurity to draw legal conclusions or opinions.  Azurity further objects to this interrogatory to the extent it is compound and contains multiple discrete subparts, and therefore may exceed the number of interrogatories permitted in this action.

Subject to and without waiver of the foregoing objections, and to the extent understood, Azurity responds as follows: Azurity incorporates by reference its Initial Infringement Claim Charts, served on May 14, 2021 (as to the '028 Patent and the '046 Patent) and July 7, 2021 (as to

the '948 Patent).  Azurity also incorporates by reference its Answering Brief in Opposition to Alkem's Motion for Judgment on the Pleadings (D.I. 76).  Azurity also incorporates by reference the hearing transcript from the January 6, 2022 hearing (D.I. 103).  Azurity also incorporates by reference the Court's Memorandum Opinion and Order Denying Alkem's Motion for Judgment on the Pleadings (D.I. 106; D.I. 107).

Azurity will disclose its Final Infringement Claim Charts according to the Scheduling Order (and updates thereto) in this case.  Azurity expressly reserves the right to further respond to this interrogatory in Final Infringement Claim Charts and during expert discovery, which are explicitly incorporated herein for reference.

Azurity is engaged in an ongoing investigation of facts pertaining to this issue and expressly reserves the right to revise, clarify, and/or supplement its answer to this interrogatory in the future, including via expert discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

_____

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff*
*Azurity Pharmaceuticals, Inc.*

OF COUNSEL:

Tung-On Kong
Wendy L. Devine
WILSON SONSINI GOODRICH
& ROSATI
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA  94105
(415) 947-2000

Elham F. Steiner
James P.H. Stephens
Evan Sumner
WILSON SONSINI GOODRICH
& ROSATI
12235 El Camino Real, Suite 200
San Diego, CA  92130
(858) 350-2300

Ty W. Callahan
WILSON SONSINI GOODRICH
& ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA  90071
(323) 210-2900

April 8, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2022, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Neal C. Belgam, Esquire                                      *VIA ELECTRONIC MAIL*
Eve H. Ormerod, Esquire
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
*Attorneys for Defendant Alkem Laboratories*
*Ltd.*

Constance S. Huttner, Esquire                            *VIA ELECTRONIC MAIL*
Beth C. Finkelstein, Esquire
Alan H. Pollack, Esquire
WINDELS MARX LANE & MITTENDORF LLC
1 Giralda Farms
Madison, NJ  07940
*Attorneys for Defendant Alkem Laboratories*
*Ltd.*

*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)

# Exhibit C

- 51 -

## CLAIMS

1.      A non-sterile stable liquid formulation comprising a compounded solution of vancomycin hydrochloride that is homogenous and stable for at least 30 days at ambient and refrigerated temperature conditions, wherein the compounded solution is prepared from vancomycin hydrochloride and a liquid solution that is not Ora-Sweet.

2.      The liquid formulation of claim 1, wherein the liquid solution is stable for up to 3 months at accelerated conditions.

3.      The liquid formulation of claim 1, wherein the liquid solution is stable for up to 24 months at ambient conditions.

4.      The liquid formulation of claim 1, wherein the liquid solution comprises:
        (a) a buffering agent,
        (b) water,
        (c) a sweetener,
        (d) a flavoring agent,
        (e) a preservative, and
        (f) a dye.

5.      The liquid formulation of claim 4, wherein the buffering agent is about 0.12% (w/v) citric acid (anhydrous).

6.      The liquid formulation of claim 4, wherein the sweetener is about 0.2% (w/v) sucralose.

7.      The liquid formulation of claim 4, wherein the flavoring agent is about 0.05% (w/v) artificial grape flavor.

8.      The liquid formulation of claim 4, wherein the preservative is about 0.1% (w/v) sodium benzoate.

- 52 -

9.      The liquid formulation of claim 4, wherein the dye comprises about 0.0002% (w/v) D&C Yellow No. 10 and about 0.000038% (w/v) FD&C Red No. 40.

10.     The liquid formulation of claim 1, wherein the compounded solution is formulated for use in the treatment of *C. difficile* pseudomembranous colitis and Staphylococcal enterocolitis.

11.     The liquid formulation of any one of claims 1-10, wherein the compounded solution is formulated to inhibit the growth of bacteria, mold and yeast for at least 30 days at ambient and refrigerated temperature conditions.

12.     The liquid formulation of any one of claims 1-10, wherein the liquid solution is formulated to inhibit the growth of mold and yeast for greater than 30 days at room temperature conditions.

13.     The liquid formulation of any one of claims 1-12, wherein the concentration of vancomycin in the compounded solution is 1-100 mg/ml.

14.     The liquid formulation of any one of claims 1-12, wherein the concentration of vancomycin in the compounded solution is 20-60 mg/ml.

15.     The liquid formulation of any one of claims 1-12, wherein the concentration of vancomycin in the compounded solution is 25-50 mg/ml.

16.     A kit comprising

a first container comprising a non-sterile 100% (w/w) vancomycin hydrochloride powder, pre-measured into a respective unit of use amount,

a second container comprising an oral liquid solution, pre-measured into a respective unit of use amount, and

instructions for use,

- 53 -

wherein the first and second containers are of a size such that the vancomycin hydrochloride powder and oral liquid solution can be combined in either the first or second container to produce a compounded solution of vancomycin hydrochloride, and wherein the compounded solution of vancomycin hydrochloride is homogenous and stable for at least 30 days at ambient  and refrigerated temperature conditions.

17.     The kit of claim 16, wherein the first or second container is a size to hold a 25 mg/mL or 50 mg/mL vancomycin oral liquid solution.

18.     The kit of claim 16, wherein the first container houses 3.84 g, 7.69 g, 10.76 g, or 15.38 g vancomycin hydrochloride.

19. The kit of claim 16, wherein the first or second container is a size to hold a volume appropriate for therapy to treat *C. difficile* pseudomembranous colitis and/or Staphylococcal enterocolitis; 5 oz. (150 mL, as dispensed), 7 oz. (210 mL, as dispensed) and 10 oz. (300 mL, as dispensed).

20. A non-sterile stable liquid formulation comprising a compounded solution of vancomycin hydrochloride that is homogenous and stable for at least 30 days at ambient  and refrigerated temperature conditions, wherein the compounded solution has a high solubility in water  and a pH of about 2.5-4.5.

21. The liquid formulation of claim 20, wherein the compounded solution is an amber color.

22. The liquid formulation of claim 20, wherein the compounded solution includes a sweetener.

23. A non-sterile stable liquid formulation comprising a compounded solution of vancomycin hydrochloride that has been dissolved in a liquid solution comprising a preservative, wherein the compounded solution is stable for at least 30 days at ambient and refrigerated

- 54 -

temperature conditions and wherein the preservative is present in the liquid solution at a concentration range of 0.08- 0.2% (w/v).

24.     A liquid solution comprising:

(a) 0.1-0.4% (w/v) citric acid (anhydrous),

(b) water,

(c) 0.1-0.3% (w/v) sucralose,

(d) 0.01-0.1 (w/v) of a flavoring agent,

(e) 0.08- 0.2% (w/v) sodium benzoate, and

(f) 0.0001-0.0003% (w/v) of a dye.

25.     The liquid solution of claim 24, wherein the citric acid is 0.12% (w/v) of the solution.

26.     The liquid solution of claim 24, wherein the sucralose is 0.2% (w/v) of the solution.

27.     The liquid solution of claim 24, wherein the flavoring agent is 0.05% (w/v) artificial grape flavor.

28.     The liquid solution of claim 24, wherein the sodium benzoate is about 0.1% (w/v) of the solution.

29.     The liquid solution of claim 24, wherein the dye comprises about 0.0002% (w/v) D&C Yellow No. 10 and about 0.000038% (w/v) FD&C Red No. 40.

Docket No.: C1047.70003US07
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

First Named Inventor: Indu Muni
Application No.: Not Yet Assigned
Confirmation No.: Not Yet Assigned
Filed: Concurrently Herewith
For: COMPOSITION AND METHOD FOR VANCOMYCIN ORAL
 LIQUID
Examiner: Not Yet Assigned
Art Unit: Not Yet Assigned

## PRELIMINARY AMENDMENT UNDER 37 C.F.R. § 1.115

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

## INTRODUCTORY COMMENTS

 Prior to examination on the merits, please amend the above-identified U.S. patent application as follows:

 Amendments to the Specification begin on page 2 of this paper.

 Amendments to the Claims are reflected in the listing of claims which begins on page 3 of this paper.

 Remarks/Arguments begin on page 6 of this paper.

## AMENDMENTS TO THE SPECIFICATION

Please amend the specification as follows:

Please update the Related Applications section as follows:

This application is a continuation of U.S. Application No. 15/126059, filed September 14, 2016, which is a national stage application of international application no. PCT/US2015/020575, filed March 13, 2015 which claims the benefit of priority under 35 U.S.C. § 119(e) to U.S. Provisional Application Serial No. 61/953, 076, filed on March 14, 2014, and U.S. Provisional Application Serial No. 61/992,414, filed on May 13, 2014, both entitled "COMPOSITION AND METHOD FOR VANCOMYCIN ORAL LIQUID" each of which is are herein incorporated by reference in its their entirety.

Please enter the Substitute Specification, filed herewith as marked-up and clean copies.  No new matter has been added.

Application No.: Not Yet Assigned                3                Docket No.: C1047.70003US07
Amendment dated July 28, 2020
Preliminary Amendment

## AMENDMENTS TO THE CLAIMS

Please replace all prior versions and listings of claims in the application with the following list of claims, in which insertions are indicated by underlining and deletions are indicated by strikeouts or double bracketing.

1.-17.  Canceled

18.    (New) A non-sterile stable liquid formulation formulated for oral administration, consisting of:

(a) a buffering agent, wherein the buffering agent is selected from the group consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate, tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide, magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate, calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium bicarbonate, and calcium salts.

(b) water,

(c) a sweetener,

(d) sodium benzoate,

(e) vancomycin hydrochloride, and

(f) flavoring agent,

wherein the non-sterile stable liquid formulation is homogenous and stable for at least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.

19.    (New) The liquid formulation of claim 18, wherein the sodium benzoate is 0.02-0.08% w/v.

20.    (New) The liquid formulation of claim 18, wherein the buffer is citric acid 0.12% w/v.

21.    (New) The liquid formulation of claim 18, wherein the sweetener is 0.1-0.3% w/v.

Application No.: Not Yet Assigned    4    Docket No.: C1047.70003US07
Amendment dated July 28, 2020
Preliminary Amendment

22. (New) A non-sterile stable liquid formulation formulated for oral administration, consisting of:

 (a) a buffering agent, wherein the buffering agent is selected from the group consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate, tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide, magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate, calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium bicarbonate, and calcium salts.

 (b) water,

 (c) a sweetener,

 (d) a preservative, wherein the preservative is selected from the group consisting of sodium benzoate, parabens, benzoic acid, potassium sorbate benzyl alcohol, or salts thereof

 (e) vancomycin hydrochloride, and

 (f) flavoring agent,

 wherein the non-sterile stable liquid formulation is homogenous and stable for at least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.

23. (New) The liquid formulation of claim 22, wherein the buffer is citric acid 0.12% w/v.

24. (New) A method of treating Clostridium difficile pseudomembranous colitis or Staphylococcal enterocolitis in a subject comprising administering a vancomycin oral liquid composition to the subject in a therapeutically effective amount, wherein the vancomycin oral liquid composition consists of:

 (a) a buffering agent, wherein the buffering agent is selected from the group consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate, tripotassium phosphate, sodium acetate,

potassium metaphosphate, magnesium oxide, magnesium carbonate, magnesium silicate, calcium

acetate, calcium glycerophosphate, calcium chloride, calcium hydroxide, calcium lactate, calcium

carbonate, calcium bicarbonate, and calcium salts.

(b) water,

(c) a sweetener,

(d) a preservative, wherein the preservative is selected from the group consisting of sodium

benzoate, parabens, benzoic acid, potassium sorbate benzyl alcohol, or salts thereof

(e) vancomycin hydrochloride, and

(f) flavoring agent.

25.      (New) The method of claim 24, wherein the buffering agent is citric acid.

26.      (New) The method of claim 24, wherein the sweetener is 0.1-0.3% w/v.

27.      (New) The method of claim 24, wherein the flavoring agent is a berry flavor.

28.      (New) The method of claim 24, wherein the preservative is sodium benzoate.

## REMARKS

An amendment to the specification is presented to update the priority claim and provide legible text on pages 8, 27-29, 35, 37-39 and 46-47.  Minor typographical error and hyperlinks have also been corrected throughout the specification.  The pending application is believed to be in condition for substantive examination.

Claims 1-17 are canceled without prejudice or disclaimer.  New claims 18-28 are added. Claims 18, 22 and 24 are independent claims.

No new matter has been added.


Dated:  July 28, 2020                                       Respectfully submitted,

                                                           Electronic signature:  /Helen C. Lockhart/
                                                           Helen C. Lockhart
                                                           Registration No.: 39,248
                                                           WOLF, GREENFIELD & SACKS, P.C.
                                                           600 Atlantic Avenue
                                                           Boston, Massachusetts  02210-2206
                                                           617.646.8000

# Exhibit D



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 23628 | 7590 | 09/18/2020 |

WOLF GREENFIELD & SACKS, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210-2206

| EXAMINER |
|---|
| ALAWADI, SARAH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1619 | |

DATE MAILED: 09/18/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/941,400 | 07/28/2020 | Indu Muni | C1047.70003US07 | 8581 |

TITLE OF INVENTION: COMPOSITION AND METHOD FOR VANCOMYCIN ORAL LIQUID

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 12/18/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING
DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD
CANNOT BE EXTENDED.  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT
FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN
THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST
TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that
entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled
"Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity
fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail
Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980.
It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at
www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |
|---|---|---|---|

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

23628        7590        09/18/2020

**WOLF GREENFIELD & SACKS, P.C.**
600 ATLANTIC AVENUE
BOSTON, MA 02210-2206

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/941,400 | 07/28/2020 | Indu Muni | C1047.70003US07 | 8581 |

TITLE OF INVENTION: COMPOSITION AND METHOD FOR VANCOMYCIN ORAL LIQUID

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 12/18/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ALAWADI, SARAH | 1619 | 424-404000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br><br>☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br><br>☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.<br><br>1 _____<br>2 _____<br>3 _____ |
|---|---|

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required) ☐ Advance Order - # of Copies _____
4b. Method of Payment: *(Please first reapply any previously paid issue fee shown above)*
☐ Electronic Payment via EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/941,400 | 07/28/2020 | Indu Muni | C1047.70003US07 | 8581 |

| | |
|---|---|
| 23628         7590         09/18/2020 | **EXAMINER** |
| WOLF GREENFIELD & SACKS, P.C. | ALAWADI, SARAH |
| 600 ATLANTIC AVENUE | |
| BOSTON, MA 02210-2206 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1619 | |

DATE MAILED: 09/18/2020

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>16/941,400 | Applicant(s)<br>Muni et al. | |
|---|---|---|---|
| | Examiner<br>SARAH ALAWADI | Art Unit<br>1619 | AIA (FITF) Status<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>07/28/2020</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>18-28</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All    b) ☐ Some    *c) ☐ None of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>09/11/2020</u>.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. <u>20200913</u>.

5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

| /SARAH ALAWADI/<br>Examiner, Art Unit 1619 | |
|---|---|
| | |

Application/Control Number: 16/941,400                                              Page 2
Art Unit: 1619

**ALLOWABILITY NOTICE**

### *Information Disclosure Statements*

Information Disclosure Statements (IDS) filed on 09/11/2020 has been

considered by the Examiner. A signed copy of the IDS is included with the present

Office Action.

### *Examiner's Amendment*

An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with

Helen C. Lockhart on 09/04/2020.

The application has been amended as follows:

Claims 18 and 22 and 24 as shown below have been amended to remove the

period after buffering agent. In addition claim 22 and 24 adds a comma after salts

thereof and after potassium sorbate, and claim 24 has been amended to recite the

wherein the vancomycin oral liquid composition is homogenous and stable for at least 1

week at ambient and refrigerated temperature and has a pH of 2.5-4.5. See Examiner's

claim amendments below.

Application/Control Number: 16/941,400                                          Page 3
Art Unit: 1619

Claim 18 (Amended) A non-sterile stable liquid formulation formulated for oral administration, consisting of:

(a) a buffering agent, wherein the buffering agent is selected from the group consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate, potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate, tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide, magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate, calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium bicarbonate, and calcium salts.,

(b) water,

(c) a sweetener,

(d) sodium benzoate,

(e) vancomycin hydrochloride, and

(f) flavoring agent,

wherein the non-sterile stable liquid formulation is homogenous and stable for at least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.

Claim 22 (Amended) A non-sterile stable liquid formulation formulated for oral administration, consisting of:

(a) a buffering agent, wherein the buffering agent is selected from the group consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate,

Application/Control Number: 16/941,400                                    Page 4
Art Unit: 1619

potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate,

tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide,

magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate,

calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium

bicarbonate, and calcium salts~~-~~,

    (b) water,

    (c) a sweetener,

    (d) a preservative, wherein the preservative is selected from the group consisting

of sodium benzoate, parabens, benzoic acid, potassium sorbate, benzyl alcohol or salts

thereof,

    (e) vancomycin hydrochloride, and

    (f) flavoring agent,

    wherein the non-sterile stable liquid formulation is homogenous and stable for at

least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.


    Claim 24 ( Amended) A method of treating Clostridium difficile

pseudomembranous colitis or Staphylococcal enterocolitis in a subject comprising

administering a vancomycin oral liquid composition to the subject in a therapeutically

effective amount, wherein the vancomycin oral liquid composition consists of:

    (a) a buffering agent, wherein the buffering agent is selected from the group

consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium

carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate,

potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate,

tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide,

magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate,

calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium

bicarbonate, and calcium salts.,

    (b) water,

    (c) a sweetener,

    (d) a preservative, wherein the preservative is selected from the group consisting

of sodium benzoate, parabens, benzoic acid, potassium sorbate, benzyl alcohol, or salts

thereof,

    (e) vancomycin hydrochloride, and

    (f) flavoring agent,

    wherein the vancomycin oral liquid composition is homogenous and stable for at

least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.


                ***Statement of Reasons for Allowance***

    The following is an examiner's statement of reasons for allowance:  The instant

claims are to a non-sterile stable liquid formulation formulated for oral administration,

consisting of: ingredients

    (a) a buffering agent, wherein the buffering agent is selected from the group

consisting of citric acid, sodium citrate, sodium tartarate, sodium acetate, sodium

carbonate, sodium polyphosphate, potassium polyphosphate, sodium pyrophosphate,

potassium pyrophosphate, disodium hydrogen phosphate, trisodium phosphate,

tripotassium phosphate, sodium acetate, potassium metaphosphate, magnesium oxide,

magnesium carbonate, magnesium silicate, calcium acetate, calcium glycerophosphate,

calcium chloride, calcium hydroxide, calcium lactate, calcium carbonate, calcium

bicarbonate, and calcium salts.,

(b) water,

(c) a sweetener,

(d) a preservative, wherein the preservative is selected from the group consisting

of sodium benzoate, parabens, benzoic acid, potassium sorbate, benzyl alcohol or salts

thereof,

(e) vancomycin hydrochloride, and

(f) flavoring agent,

wherein the non-sterile stable liquid formulation is homogenous and stable for at

least 1 week at ambient and refrigerated temperature and has a pH of 2.5-4.5.


Palepu (WO 2014/194296-cited in IDS) teaches that the vancomycin-containing

compositions are stable for at least 24 months of storage at a temperature of from about

5 °C to about 25 °C. Without being bound by theory, it is believed that the surprising

long-term stability of solutions prepared according to the present invention arises at

least in part from the interaction between lactic acid (or the lactate molecule used in

certain embodiments), the polar solvent (e.g., propylene glycol) and vancomycin.

Palepu's formulations require propylene glycol present as the polar solvent with lactic

acid, see page 4 at lines 20-31.

Robinson (WO1997/019690-cited in the IDS) teaches liquid vancomycin

solutions that require ethanol for forming stable solutions of vancomycin hydrochloride,

Application/Control Number: 16/941,400                                        Page 7
Art Unit: 1619

see abstract and page 3 at lines 19-28. Robinson does not teach that the composition

further contains for oral use buffering agent as claimed together with the claimed

preservatives, and with sweetener and flavoring agent.

Palepu (United States Patent Publication 2016/0101147- cited in IDS) teaches

solutions which have propylene glycol or polyethylene glycol solvent present with lactic

acid in the liquid formulation. The instant claims recite a composition <u>consisting of</u>

ingredients a-f and is stable and homogenous for at least 1 week at ambient and

refrigerated temperature, and thus are allowable over the teachings of Palepu. None of

the prior art teaches or suggests a composition consisting of ingredients a-f as claimed

that is homogenous and stable for at least a week and has a pH from 2.5-4.5.

Examiner acknowledges the approved terminal Declaimer Field on 09/11/2020.

**Accordingly, claims 18-28 are allowable.**

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


*Correspondence*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to SARAH ALAWADI whose telephone number is

(571)270-7678.  The examiner can normally be reached on Monday-Friday 10:00am-

6:30pm EST.

Application/Control Number: 16/941,400                                                    Page 8
Art Unit: 1619

     Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, David Blanchard can be reached on 571-272-0827.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


     /SARAH ALAWADI/
     Examiner, Art Unit 1619

# Exhibit E

Redacted In Its Entirety

# Exhibit F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC., | |
| Plaintiff, | C.A. No. 20-1094 (MSG) |
| v. | |
| ALKEM LABORATORIES LTD., | |
| Defendant. | |

## ALKEM LABORATORIES LIMITED'S FIRST SET OF REQUESTS FOR THE
## PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-99)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules"), Alkem Laboratories Limited ("Alkem" or "Defendant"), by and through its counsel, request that Plaintiff Azurity Pharmaceuticals, Inc. ("Azurity" or "Plaintiff") produce and permit Alkem to inspect and copy each of the documents and things requested below in accordance with those rules and the Definitions and Instructions set forth below. Unless otherwise agreed, production is to be made on or within thirty (30) days of service hereof at the offices of Windels Marx Lane & Mittendorf LLP, One Giralda Farms, Madison, NJ, 07940.

## DEFINITIONS

The following definitions shall apply throughout these requests, regardless of whether upper of lower-case letters are used:

1.      The definitions and instructions set forth in Federal Rules of Civil Procedure 26(b) and 34 and the Local Rules, and the following definitions and instructions, apply to all requests to Plaintiff.

2.      The terms "and" and "or" shall be interpreted as "and/or," that is, as conjunctive, disjunctive, or both, so that the fullest and most complete disclosure of information is achieved.

3.      "Concerning" means relating to, referring to, regarding, describing, evidencing, reflecting, comprising or constituting.

4.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34 of Federal Rules of Civil Procedure, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

5.      "Thing(s)" means any tangible item other than a document.

6.      "Communication(s)" include, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, mail, personal delivery or otherwise, including, but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements, and other understandings.

7.      "Produce" means to provide legible, complete, and exact copies or responsive documents to the undersigned counsel, or to make such documents available to the undersigned counsel for inspection and reproduction.

8.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory or request for production all responses or documents that otherwise might be construed to be outside of its scope.

9.      "All," "any," and "each," as used herein, shall be construed to mean "each and every."

10.     "Including" means without limitation.

11.     "Defendant" or "Alkem" means Defendant Alkem Laboratories Ltd.

12.     The term "Plaintiff," "Azurity," "You," or "Your" means Azurity Pharmaceuticals, Inc., its parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, either collectively, individually, or in any subset; and its present and former officers, directors, principals, employees, agents, representatives, assigns, consultants, attorneys, experts, insurers, accountants, and others acting or purporting to act on its behalf.

13.     "This action" means the above-captioned case, C.A. No. 20-1094.

14.     The "'028 Patent" means United States Patent No. 10,493,028.

15.     The "'046 Patent" means United States Patent No. 10,688,046.

16.     The "'948 Patent" means United States Patent No. 10,959,948.

17.     "Asserted Patent(s)" or "Patents-in-Suit" means, collectively or singularly, the '028, '046, and '948 Patents, any applications that led to their issuance, any ancestor or child applications of the '028, '046, or '948 patents.

18.     "Related Application(s)" or "Related Patent(s)" means any foreign or U.S. patent application (e.g., provisional, continuation, continuation-in-part, divisional, reexamination proceeding, reissue, or inventor's certificate) whether abandoned, pending, or published, and every foreign or domestic patent grant based thereon, that directly or indirectly claims any priority to or shares common ancestry with one or more of the Patents-in-suit, or to which one or more of the Patents-in-suit claims priority.

19.     "Prior Art" means all publications, patents, disclosures, sales, offers for sale, prior inventions, admissions, facts, items, or other acts or occurrences that Azurity knows that may be used to raise an invalidity defense under 35 U.S.C. §§ 102 and/or 103.

20.     "Person" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, including governmental bodies and agencies.

21.    "NDA" means Azurity's New Drug Application No. 208910, for Firvanq® Kit, and all related supplemental NDAs.

22.    "Formulation" means a drug product, dosage form, or other composition that allows release of an active pharmaceutical ingredient.

23.    "Test(s)," "tested," or "testing" means subjecting to any measurement, observation, or analysis and/or the results, data, output, charts, or interpretation thereof performed by or on behalf of the Plaintiff, whether completed or not. These terms shall be construed to include all protocols, procedures, or methods used in performing such instrumental analysis; the identity of the instrument; procedures or methods used in maintaining and operating the instrument; the conditions under which the testing was performed; all data or information input to the instrument for conducting the test or tests; all output, whether in hardcopy or in the form of computer or digital files, including, without limitation, all data, files, CD or DVD discs, floppy discs, graphs, charts, pictures, photographs, or spectra; and all interpretation or subsequent analysis of the data obtained or inferred through such testing including, without limitation, all such subsequent data interpretation done, in full or in part by means or with the assistance of any computer or computer program or software.

24.    As used herein in connection with an "entity," the term "for or on behalf of" Plaintiff refers to any entity that Plaintiff hired, contracted with, or engaged as an agent concerning the category of documents and things being requested, Plaintiff's NDA, or concerning any vancomycin drug product and its raw materials, intermediates, ingredients, excipients, and components; and the request, instruction, or definition should be understood to concern and relate to responsive materials generated by or for any contract research organization or contract manufacturing organization.

25.    "Third party" and/or "third parties" refers to and includes any natural person and/or any business, legal, and/or governmental entity and/or association other than Azurity and, where

applicable, their current and former officers, directors, employees, consultants, attorneys, experts, agents, partners, corporate parents, subsidiaries, predecessors and/or affiliates or any of them.

26.     The use of any definition for the purposes of these requests shall not be deemed to constitute an agreement or acknowledgement on the part of Alkem that such definition is accurate, meaningful, or appropriate for any other purpose in this litigation.

## INSTRUCTIONS

1.     Unless a request specifically states otherwise, references to the singular shall include the plural and vice versa; references to one gender shall include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

2.     If Plaintiff has any good-faith objection to any request or part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request should be stated. If there is an objection to any part of a request, the part objected to should be identified and documents and information responsive to the remaining unobjectionable part should be produced.  An objection should state whether any responsive materials are being withheld on the basis of that objection.

3.     If documents and things are produced as they are maintained in the usual course of business, all associated file labels, file headings thereon, and file folders shall be produced together with the responsive documents from each file such that the labels, headings, and folders precede the documents with which they are associated.  The owner or custodian of each file shall be identified.

4.     If Plaintiff contends that information responsive to any discovery request is incomplete, all responsive information presently available to the Plaintiff should be provided.

5.     For any document or thing requested herein that has been destroyed, transferred, or lost, Plaintiff shall identify the document and provide an explanation of the circumstances (*e.g.*,

when, how, by whom, and why) surrounding the destruction of the document or thing, or its transfer, or loss, and any and all records pertaining to its destruction, transfer, or loss.

6.      If the Plaintiff knows of the existence, past or present, of any document or thing responsive to a request, but such document or thing is not presently in the Plaintiff's possession, custody, or control, Plaintiff shall so state in response to the request, identify such document or thing in response to the request, and identify the person in whose possession, custody, or control the document or thing was last known to reside.

7.      If the Plaintiff withholds information, document or thing by claiming any privilege or immunity, the Plaintiff should provide a "privilege log" that for each piece of information, document or thing withheld, identifies or provides the privilege or immunity being claimed; a description of the nature of the information, document or thing being withheld; the date on which the information, document or thing is created, prepared or communicated and all person(s) involved in the creation, preparation or communication.

These requests are continuing and require the Plaintiff to serve supplemental responses and documents and things promptly in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Such responses, documents and things shall be provided or produced as soon as they become available to the Plaintiff.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**
All documents produced to any defendant in the following District of Minnesota case filed by the Plaintiff: DMN-021-cv-00796, as well as in any later-filed litigation related to this case.

**REQUEST NO. 2**
All documents and things concerning or relating to the Patents-in-Suit, the subject matter disclosed or claimed in the Patents-in-Suit, and the Related Applications, including U.S. Patent Application Nos. 15/791,717, 15/126,059, 16/676,325, 16/892,421, 17/077,969, 17/165,754, 16/941,400, 16/941,414, and 16/988,387, PCT/US2015/020575, U.S. Provisional Application Nos. 61/992,414 and 61/953,076, and any foreign counterparts.

**REQUEST NO. 3**

All documents and things concerning or relating to affidavits and/or declarations related to the Patents-in-Suit, including underlying data relied upon in said affidavits and/or declarations, and exhibits attached to or accompanying said affidavits and/or declarations.

**REQUEST NO. 4**

All transcripts of depositions and/or hearings related to the Patents-in-Suit.

**REQUEST NO. 5**

Any correspondence with or submissions to the USPTO or any foreign equivalent thereof related to the Patents-in-Suit or foreign equivalents, including drafts thereof.

**REQUEST NO. 6**

Any communications concerning the prosecution of the Patents-in-Suit or foreign equivalents.

**REQUEST NO. 7**

Any documents or information generated or considered in connection with the prosecution of the Patents-in-Suit or foreign equivalents.

**REQUEST NO. 8**

Any documents related to the decision to file and prosecute the applications that led to the Patents-in-Suit.

**REQUEST NO. 9**

All documents and things supporting all examples and figures in the Patents-in-Suit, including but not limited to source data, documentation, and laboratory notebooks.

**REQUEST NO. 10**

All documents and things that concern, relate to, support, refute, or comment upon the construction of any asserted claim of the Patents-in-Suit, the infringement of any asserted claim of the Patents-in-Suit, the validity of any asserted claim of the Patents-in-Suit, and/or the enforceability of the Patents-in-Suit.

**REQUEST NO. 11**

All documents and things, including laboratory records, laboratory notebooks, research reports, progress reports, memoranda, inter-office correspondence, and photographs, concerning or relating to, or which describe or comment upon, the research, development or testing activities concerning the subject matter claimed or disclosed in the Patents-in-Suit, vancomycin and pharmaceutical salts thereof, or Firvanq® Kit.

**REQUEST NO. 12**

All documents or other communications by or on behalf of the named inventors of the Patents-in-Suit and Related Applications, including, but not limited to, drafts and final versions of articles, other publications, memoranda, or reports, concerning or relating to the subject matter disclosed or claimed in the Patents-in-Suit or the research and development leading to that subject matter.

**REQUEST NO. 13**

All documents and things concerning the rationale to develop the claimed vancomycin oral solution and/or other oral solutions containing vancomycin, including, but not limited to, Firvanq® Kit and any predecessor products.

**REQUEST NO. 14**

All documents and things concerning or relating to any features, properties, characteristics, benefits, advantages, and/or disadvantages of the claimed vancomycin oral solution and any other vancomycin oral solutions, including, but not limited to, any studies, experiments, tests, memoranda, or publications that analyze or otherwise comment upon such features, properties, characteristics, benefits, advantages, and/or disadvantages of the claimed vancomycin oral solutions.

**REQUEST NO. 15**

All documents and things concerning or relating to comparisons, differences, or advantages of different vancomycin oral solutions.

**REQUEST NO. 16**

All documents and things concerning or relating to the research and development, synthesis, and attempts to produce any oral solutions of vancomycin, including, but not limited to, any studies, experiments, tests, memoranda, or publications that analyze or otherwise comment upon oral solutions of vancomycin.

**REQUEST NO. 17**

All documents and things concerning or relating to the characterization or stability studies conducted on vancomycin oral solutions performed by or on behalf of Plaintiff.

**REQUEST NO. 18**

All documents and things concerning or relating to Plaintiff's life cycle management of patent rights protecting vancomycin and vancomycin oral solutions, including but not limited to, development of alternative dosage strengths, indications, or marketing efforts pertaining to patent rights protecting vancomycin oral solutions.

**REQUEST NO. 19**

All documents and things concerning or relating to any process for making vancomycin oral solutions, including, but not limited to, any studies, experiments, tests, memoranda, or publications that analyze or otherwise comment upon such process.

**REQUEST NO. 20**

With respect to the subject matter of each asserted claim of the Patents-in-Suit, all documents and things concerning:

(a) the conception of the claimed subject matter, each of the acts that were involved in the claimed conception, the person or persons involved in such acts, and the nature of their involvement;

(b) the reduction to practice of the claimed subject matter, indicating whether actual or constructive, each of the acts involved in reduction to practice, the person or persons involved in such acts, and the nature of their involvement;

(c) the date of commencement of diligence, if any, towards the reduction to practice identified in (b) above;

(d) the first written description of the claimed subject matter of the Patents-in-Suit, including, but not limited to, when the description was made, the person or persons involved in the descriptions, and the nature of their involvement;

(e) the first disclosure of the claimed subject matter of the Patents-in-Suit to another, including, but not limited to, the date of such disclosure, the identity of the persons who made such disclosures, and the person or persons who made such disclosures, and the person or persons to whom the disclosures were made;

(f) the testing, evaluation, or analysis of the claimed subject matter of the Patents-in-Suit;

(g) the development or use of the claimed subject matter of the Patents-in-Suit;

(h) the sale or offer for sale of any product of the claimed subject matter of the Patents-in-Suit; and/or

(i) the communication, disclosure, showing, sampling, display, or demonstration of the claimed subject matter of the Patents-in-Suit to anyone not named an inventor of the Patents-in-Suit.

## REQUEST NO. 21

All documents and things concerning or relating to any agreements, contracts, or negotiations concerning the licensing, acquisition, sale, or transfer of any rights or assets relating to the Patents-in-Suit, Firvanq® Kit, or any product containing vanocmycin.

## REQUEST NO. 22

All documents and things concerning Plaintiff's (i) consideration of or decision to license, sell, or transfer any rights to any person or entity concerning any vancomycin product, including without limitation Firvanq® Kit, or (ii) licensing of or attempts to license the Patents-in-Suit.

## REQUEST NO. 23

All documents and communications concerning any investigational new drug application ("IND") related to vancomycin oral solution, including, but not limited to, Plaintiff's IND, including all versions, supplements, amendments, revisions, updates, and all communications to and from FDA regarding Plaintiff's IND.

## REQUEST NO. 24

All documents and things that are Prior Art to, or that concern, relate to, interpret, or comment upon Prior Art to, the Patents-in-Suit, with all available full or partial English translations.

## REQUEST NO. 25

All patents, publications, scientific publications, or technical papers concerning or relating to the subject matter claimed or disclosed in the Patents-in-Suit.

## REQUEST NO. 26

All documents and things that concern or relate to the benefits, features, use, operation, or function of products within the scope of any claim of the Patents-in-Suit, or of vancomycin oral solutions.

## REQUEST NO. 27

All documents and things which constitute, relate to, concern, comment upon, or include, any opinion, Prior Art search, analysis, or advice of any attorney or any other person involving the validity, inventorship, ownership, infringement, enforceability, or scope of the claims of the Patents-in-Suit, or the patentability of any subject matter described in the Patents-in-Suit, including but not limited to, any Prior Art patents or publications referred to in any such opinion or advice.

## REQUEST NO. 28

All documents and things concerning any communication between the Plaintiff and any of the named inventors of the Patents-in-Suit.

## REQUEST NO. 29

All documents and things concerning the relationship between the Plaintiff and the named inventors of the Patents-in-Suit, including, but not limited to, any contracts or agreements between Plaintiff and any of the named inventors of the Patents-in-Suit and the curriculum vitae or resumes for each of the named inventors of the Patents-in-Suit.

## REQUEST NO. 30

All documents and things concerning any communications between Plaintiff or the named inventors of the patents-in-suit and any third parties, including medical professionals, clinics, hospitals, or providers of medical or research services regarding the manufacture or use of Firvanq® Kit or any other product in which the active pharmaceutical ingredient is vancomycin, including, but not limited to, any confidentiality agreements, any records concerning the manufacture, distribution, sale, donation, or transfer of vancomycin formulations, including vancomycin oral solutions, the batch numbers and composition of any vancomycin or formulations containing vancomycin which were manufactured, distributed, sold, donated, or transferred, and the results of any experiments conducted by third party medical professionals or research services.

## REQUEST NO. 31

All documents concerning or relating to any NDA (including without limitation complete copies of Azurity's NDA, including without limitation all versions, amendments, supplements, additions, revisions, updates, and annual reports), and any actual or contemplated amendment, supplemental filing, or addition thereto, submitted to the FDA seeking permission to manufacture, market, or sell vancomycin oral solutions and the products sold under the name Firvanq® Kit, including without limitation:

(a) documents concerning or relating to the history and status of any application for approval by FDA, including without limitation any NDA filed by or for Azurity for such a product and all documents related thereto, including NDA amendments, supplements, deficiency letters, tentative approval letters, and final approval letters;

(b) documents concerning or relating to any communication, correspondence, or contact with the FDA by Azurity concerning each such NDA, and any amendment, supplemental filing, or addition thereto, including, but not limited to, letters, emails, teleconference minutes, notes, and meeting

minutes from discussions held with and between Azurity and the FDA;

(c) documents concerning or relating to the prosecution of each such NDA, including, but not limited to, internal meeting minutes, notes, internal correspondence, draft submissions, and plans;

(d) documents concerning or relating to the decision to file, the steps taken to prepare, and the timing of the submission of each such NDA or any of the documents or information contained therein;

(e) documents concerning or relating to any difficulties, problems, or delays in obtaining FDA approval for any such NDA;

(f) a complete copy of each drug master file referenced in each such NDA; and/or

(g) documents concerning or relating to any active ingredient in the products described in Azurity's NDA.

**REQUEST NO. 32**
All documents and things which relate to, concern, or comment upon studies, accusations or discussions of litigation or potential litigation involving the Patents-in-Suit or any related application or patent, including all documents and things concerning ownership, inventorship, patentability, validity, infringement, and enforceability of the patents-in-suit or any related application or patent.

**REQUEST NO. 33**
All documents and things supporting or otherwise concerning to or relating to any contention that Alkem, or any other corporation or entity, may infringe, have infringed, willfully infringed, actively induced others to infringe, or contributed to the infringement of any claim of the Patents-in-Suit.

**REQUEST NO. 34**
All documents and things which relate to, concern, or comment upon inducement to infringe the Patents-in-Suit by any company or individual.

**REQUEST NO. 35**
All documents evidencing the level of ordinary skill in the art to which Plaintiff contends the subject matter of the asserted claims of the Patents-in-Suit pertain.

**REQUEST NO. 36**
All documents concerning or relating to the non-obviousness or obviousness of any subject matter claimed or disclosed in the Patents-in-Suit, including without limitation any documents and things that support or refute any alleged secondary indicia of non-obviousness of the Patents-in-Suit, including without limitation long felt need, commercial success, failure of others, unexpected results, copying, skepticism, praise, and independent development by others.

**REQUEST NO. 37**
All documents or things concerning or relating to why one of ordinary skill in the art would or would not have been motivated to administer vancomycin oral solution to a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains).

**REQUEST NO. 38**

All documents concerning or relating to the decision to select the vancomycin hydrochloride oral solution for use in Firvanq® Kit, including any studies, analyses, or tests run to determine the suitability of the vancomycin oral solution for use in Firvanq® Kit.

**REQUEST NO. 39**

All documents concerning or relating to any teaching, suggestion, motivation, or reason to combine Prior Art teachings to yield the subject matter disclosed or claimed in the Patents-in-Suit.

**REQUEST NO. 40**

All documents and things concerning, relating to, or supporting Plaintiff's contention in its complaint that this case is exceptional under 35 U.S.C. § 285.

**REQUEST NO. 41**

All documents relating to any preclinical or clinical studies involving any drug product comprising vancomycin, that the Plaintiff contends is covered by, or embodies in whole or in part, any claim of the Patents-in-Suit, or that relate to the treatment of a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains) using vancomycin oral solutions.

**REQUEST NO. 42**

All documents and things concerning the safety, efficacy, or effectiveness of Firvanq® Kit, including, without limitation, any unexpectedly advantageous or superior properties over any other known or commercially available vancomycin products, including vancomycin oral solutions.

**REQUEST NO. 43**

All documents concerning or relating to any trade research, market research, consumer research, business plans, sales forecasts, projections, or other research conducted by or on behalf of the Plaintiff concerning any vancomycin oral solution, including without limitation Firvanq® Kit, or any product or process that the Plaintiff contends is covered by or embodies in whole or in part any claim of the Patents-in-Suit.

**REQUEST NO. 44**

All documents and things concerning the first offer to sell, first sale, first public use, and first public disclosure of the subject matter described or claimed in the Patents-in-Suit.

**REQUEST NO. 45**

Documents sufficient to show quarterly, monthly, and annual financial, accounting, and sales data for any vancomycin product, including without limitation Firvanq® Kit, including the following categories: profit and loss statements; gross and net sales; gross and net income; profit margins; gross and net revenues; health maintenance organization (HMO) rebates, pharmacy benefit managers (PBM) rebates, sales volume rebates, or the like; chargebacks; special rebates/adjustments; gross trade sales reports; cash discounts; net trade sales; standard costs; royalties; total cost of sales; gross profit; net profit; marketing contribution; direct expenses; brand marketing expenses; direct-to-consumer (DTC) advertising expenses; clinical affairs expenses; selling expenses; co-promotional expenses; marketing management; marketing services; business operations; new product spending; total direct expenses; direct operating margin and product contribution statements; and any other cost or revenue item tracked by any accounting system(s).

**REQUEST NO. 46**
All data from IMS, Quintiles, QuintilesIMS, IQVIA, or another third-party provider of pharmaceutical data relating to Firvanq® Kit, any other vancomycin oral solution, any other product for the treatment of a treatment of a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains), or any other product deemed by the Plaintiff or such third party to be in the same market as Firvanq® Kit or to compete with Firvanq® Kit.

**REQUEST NO. 47**
All documents concerning or relating to corporate policy and procedure, proposals, and strategies on current, or proposed for the future, product pricing and discounting, including any memoranda, notes, or reports from meetings regarding pricing decisions with respect to vancomycin oral solutions, as well as any other vancomycin product, including without limitation Firvanq® Kit.

**REQUEST NO. 48**
Documents sufficient to show how Plaintiff calculate or measure profits for Firvanq® Kit.

**REQUEST NO. 49**
All documents that identify the products against which Firvanq® Kit competes and/or the market share achieved by Firvanq® Kit.

**REQUEST NO. 50**
Documents sufficient to show monthly and annual sales forecasts for Firvanq® Kit.

**REQUEST NO. 51**
All documents relating to any analysis or size of the market in which Firvanq® Kit is sold.

**REQUEST NO. 52**
All documents relating to any analysis or size of the market in which product(s) used for the treatment of a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains).

**REQUEST NO. 53**
Documents sufficient to identify (1) commercial products that are used to treat patients suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains), regardless of whether such commercial products are marketed or sold by Azurity; and (2) any and all products for the treatment of a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains) which Azurity currently sells, has sold, or is expecting to sell, or for which FDA approval has been sought or will be sought.

**REQUEST NO. 54**
All documents relating to any analysis or regarding the equivalence of parabens and sodium benzoate as preservatives in the vancomycin oral solution.

**REQUEST NO. 55**
All documents relating to any alleged commercial success of Firvanq® Kit and/or the claimed subject matter of the Patents-in-Suit, including:

(a) documents relating to any nexus or lack thereof between any alleged commercial success and the claimed subject matter in the Patents-in-Suit;

(b) documents showing licensing revenue attributed to licensing of any alleged invention claimed in the Patents-in-Suit;

(c) documents showing the total market in which products falling within the claimed subject matter of the Patents-in-Suit compete and the percentage of the market (based on units or dollars) which is attributed to such products;

(d) documents showing commendation or tribute by competitors, customers, or others in the industry, to any alleged advance attributed to any products falling within the claimed subject matter of the Patents-in-Suit; and/or

(e) documents showing actual savings achieved in commercial practice by use of any products falling within the claimed subject matter of the Patents-in-Suit and the basis for computing such savings.

**REQUEST NO. 56**
All documents and things relating to Firvanq® Kit, including whether or not Firvanq® Kit meets patient needs, including any analysis, commentary, or discussions thereof.

**REQUEST NO. 57**
All documents and things concerning any efforts or studies by the Plaintiff, on behalf of Plaintiff, or by others relating to any vancomycin dosage form, as well as any vancomycin oral solution, including without limitation Firvanq® Kit, and/or the research, development, and/or marketing of a treatment of a patient suffering from *Clostridium difficile*-associated diarrhea and/or enterocolitis caused by *Staphylococcus aureus* (including methicillin-resistant strains).

**REQUEST NO. 58**
All advertising, promotional, educational, or marketing materials, including physician instructions, patient brochures, patient education materials, papers, sales brochures, catalogs, data books, customer presentations, fliers, or other materials, used in connection or intended to be used in connection with any vancomycin product, including without limitation Firvanq® Kit.

**REQUEST NO. 59**
All documents and things concerning or relating to any criticism, commentary, praise, recognition, and/or attributes of Firvanq® Kit.

**REQUEST NO. 60**
All documents relating to efforts to maintain or increase the share of the market share for Firvanq® Kit.

**REQUEST NO. 61**
All documents that identify or relate to any payments, gifts, honoraria, and travel reimbursements made to physicians to promote Firvanq® Kit.

**REQUEST NO. 62**
All documents that identify or relate to any database relating to the sales of Firvanq® Kit, or prescription information for Firvanq® Kit.

**REQUEST NO. 63**
All documents that concern or relate to the sale, advertising, or marketing of Firvanq® Kit.

**REQUEST NO. 64**
All documents that comment upon or relate to any effort to convert physicians, patients, pharmacies, or other entities to Firvanq® Kit.

**REQUEST NO. 65**
All documents relating to any effort to get Firvanq® Kit listed as a preferred drug on any formulary.

**REQUEST NO. 66**
All documents relating to any strategy or plan to block, limit, reduce, or delay generic competition against Firvanq® Kit.

**REQUEST NO. 67**
All documents and things concerning the product that is the subject of Alkem's ANDA, including, without limitation, documents and things concerning the testing, study, or analysis of the chemical composition, or methods of manufacturing of such products, or any comparisons between Firvanq® Kit or the product that is the subject of Alkem's ANDA.

**REQUEST NO. 68**
All documents and things reviewed, relied on, or considered by any consultant or expert retained by the Plaintiff in connection with this action.

**REQUEST NO. 69**
All documents and things that have been disclosed, provided to, or prepared by any individual or entity from whom the Plaintiff expect to offer any declaration, affidavit, or testimony in any trial, hearing, submission to the Court, or deposition in this action.

**REQUEST NO. 70**
Each document or thing for which the Plaintiff intends to seek admission as evidence or otherwise rely on at trial or other disposition, a hearing, or a deposition in this action.

**REQUEST NO. 71**
All documents concerning or relating to any meeting of Azurity's Board of Directors at which any vanomycin dosage form, or any vancomycin oral solution, including without limitation Firvanq® Kit was discussed.

**REQUEST NO. 72**
All licenses, assignments, and contracts related to or referring to the patents-in-suit, or Firvanq® Kit, including any settlement agreements, and all documents relating to negotiations about such licenses, assignments, and contracts.

**REQUEST NO. 73**
All documents relating to research and development of any product allegedly within the scope of any claim of the Patents-in-Suit.

**REQUEST NO. 74**
All documents relating to research and development of oral solutions of vancomycin, as well as any vancomycin oral solution product, including without limitation Firvanq® Kit.

**REQUEST NO. 75**
All documents and things concerning or relating to the time, cost, and effort spent on the research and development of oral solutions of vancomycin, as well as any vancomycin product, including without limitation Firvanq® Kit.

**REQUEST NO. 76**
All documents relating to Azurity's decision to develop, make, market, and/or sell any vancomycin oral solutions, including any vancomycin product, including without limitation Firvanq® Kit.

**REQUEST NO. 77**
All documents that relate to any application filed with any governmental agency or regulatory body, whether foreign or domestic, seeking approval to manufacture, market, or test any vancomycin oral solution, as well as any vancomycin product, including without limitation Firvanq® Kit.

**REQUEST NO. 78**
All documents relating to the types of conditions or indications for which physicians may prescribe Firvanq® Kit (either on or off-label), and the factors that might influence a physician's decision with respect to whether to prescribe Firvanq® Kit, over any other product for any such condition, including the role of efficacy, side effects, price, brand name, and patents.

**REQUEST NO. 79**
All documents that compare, contrast, or comment upon the benefits, advantages, disadvantages, features, characteristics, or efficacy of vancomycin oral solutions, including without limitation Firvanq® Kit.

**REQUEST NO. 80**
All documents concerning or relating to any alleged demand for any features of vancomycin oral solutions, including without limitation Firvanq® Kit.

**REQUEST NO. 81**
All documents concerning or relating to any bases or criteria used by patients or doctors to choose between Firvanq® Kit and alternative pharmaceutical products.

**REQUEST NO. 82**
All documents and things concerning or relating to any feature of Firvanq® Kit, other than features disclosed by the Patents-in-Suit, and any price, product demand, or other relevant economic terms applicable to such feature.

**REQUEST NO. 83**
All documents concerning or relating any known difficulties, problems, or obstacles of developing the oral solutions of vancomycin.

**REQUEST NO. 84**
All documents between the Plaintiff and any third parties concerning this litigation, the Patents-in-Suit, and/or any vancomycin oral solution, including without limitation Firvanq® Kit.

**REQUEST NO. 85**
All documents relating to labeling or proposed labeling for any vancomycin oral solution, including without limitation Firvanq® Kit.

**REQUEST NO. 86**
All documents and things that support or rebut any of the allegations in Plaintiff's complaint.

**REQUEST NO. 87**
All documents and things that support or rebut any of the defenses pled by Alkem in this litigation.

**REQUEST NO. 88**
All documents that relate to Plaintiff's responses or to which Plaintiff refers to in responding to any interrogatories in this litigation.

**REQUEST NO. 89**
All documents related to the validity and/or invalidity of the Patents-in-Suit.

**REQUEST NO. 90**
All documents and things concerning, relating to, supporting, or refuting Plaintiff's allegations of substantial and irreparable damage by any alleged infringement of the Patents-in-Suit by Alkem.

**REQUEST NO. 91**
All documents relating to labeling or proposed labeling for any form of vancomycin oral solutions, including without limitation Firvanq® Kit.

**REQUEST NO. 92**
All documents supporting, refuting, or relating to Plaintiff's contentions that it is entitled to injunctive relief.

**REQUEST NO. 93**
All documents concerning agreements, communications, or contacts between the Plaintiff and/or its counsel and any third party concerning any of the Patents-in-Suit.

**REQUEST NO. 94**
All documents and things concerning or discussing any citizen petitions, or Azurity's intent to file citizen petitions, relating to any vancomycin oral solution, including, but not limited to, Firvanq® Kit, or Alkem's ANDA Product.

**REQUEST NO. 95**

All documents and things concerning the nexus or contribution of, or the relationship between, any alleged invention claimed in the Patents-in-Suit and any alleged objective indicia of non-obviousness, including without limitation long felt need, commercial success, failure of others, results, copying, skepticism, praise, and independent development by others.

**REQUEST NO. 96**

All documents and things concerning any inter partes reviews (IPRs) related to the patents-in-suit.

**REQUEST NO. 97**

All documents and things concerning any analysis conducted by or on behalf of Azurity regarding the alleged difference(s) between the prior art, specifically US 2016/0101147, and the claimed invention, including the differences between US 2016/0101147 and the claimed invention, based on the lack of propylene glycol.

**REQUEST NO. 98**

All documents relating to a third-party's or a consultant's involvement in the research, development, design, redesign, modifications of, alterations to, testing, evaluation, or use of any drug product containing vancomycin by or on behalf of Azurity, including but not limited to memoranda, notes, meeting minutes, reports, studies, laboratory notebooks, and drawings.

**REQUEST NO. 99**

Documents sufficient to determine identities, responsibilities, and duties of Plaintiff's former and current personnel having any responsibilities related to designing, developing, manufacturing, engineering, providing quality assurance, obtaining regulatory approval, marketing, distribution, importation, purchase of components, and exportation of components of Azurity's Firvanq® Kit Product, or any other oral vancomycin solution.


Dated: August 30, 2021

SMITH, KATZENSTEIN & JENKINS LLP

Of Counsel:                                    */s/ Eve H. Ormerod*
                                               Neal C. Belgam (No. 2721)
Constance S. Huttner                           Eve H. Ormerod (No. 5369)
James P. Barabas                               1000 West Street, Suite 1501
Beth C. Finkelstein                            Wilmington, DE 19801
Windels Marx Lane & Mittendorf LLP             (302) 652-8400
1 Giralda Farms                                nbelgam@skjlaw.com
Madison, NJ 07940                              eormerod@skjlaw.com
(973) 966-3200
                                               *Attorneys for Defendant Alkem Laboratories*
                                               *Ltd.*

# Exhibit G

# Firmenich

## Safety Data Sheet

According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

# 1 IDENTIFICATION OF THE SUBSTANCE/PREPARATION AND OF THE COMPANY/UNDERTAKING

### 1.1 Product identifier

**059266 A**
ARTIFICIAL GRAPE FLAVOR
© Firmenich product

### 1.2 Relevant identified uses of the substance or mixture and uses advised against

Ingredient for use in products that may be ingested.
Not for personal use in this form or concentration.
Intended to be used in the manufacture of products for consumers.

### 1.3 Details of the supplier of the safety data sheet

**Mr. Thomas Sulich**
Firmenich Inc.
P.O. Box 5880
Princeton - New Jersey 08543 - USA
thomas.sulich@firmenich.com
Tel.:+1.609.452.10.00 - Fax.:+1.609.275.72.38

### 1.4 Emergency telephone number

FOR INFORMATION OR IN AN EMERGENCY CALL CHEMTREC @ 1-800-424-9300 or 1-703-527-3887.

# 2 HAZARDS IDENTIFICATION

### 2.1 Classification of the substance or mixture

### According to Regulation HCS 2012

| | |
|---|---|
| Flammable Liquid - Cat. 3 | H226 |
| Skin Corrosion - Cat. 1B | H314 |
| Eye Damage - Cat.1 | H318 |

### Additional information

Full text of listed statements : See section 16

### 2.2 Label elements

**Hazard pictograms:**

Revised on : 30-May-2015 / v 6.5
Date of printing : 16-MAR-2016
Reference : US          14245366
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Page      1  / 10



# Safety Data Sheet

According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

 

**Signal Word:**
Danger

**Hazard Statements:**
| | |
|---|---|
| H314 | Causes severe skin burns and eye damage. |
| H226 | Flammable liquid and vapour. |

**Precautionary Statements:**
| | |
|---|---|
| P210 | Keep away from heat/sparks/open flames/hot surfaces. No smoking. |
| P260 | Do not breathe dust/fume/gas/mist/vapours/spray. |
| P264 | Wash thoroughly after handling. |
| P240 | Ground/bond container and receiving equipment. |
| P241 | Use rated explosion-proof electrical equipment. |
| P242 | Use only non-sparking tools. |

2.3 Other hazards
CAUTION: THIS MATERIAL CONTAINS VOLATILE FLAVORING CHEMICALS IDENTIFIED IN THE FEMA "RESPIRATORY HEALTH AND SAFETY MANUFACTURING WORKPLACE" DOCUMENT.
No data available at this time.

## 3 COMPOSITION/INFORMATION ON INGREDIENTS

The exact percentage (concentration) of composition has been withheld as a trade secret.

**3.2 Mixture**
Mixture of aromatic substances.

Contains :

>= 20.0 < 30.0%
Acetic Acid
N° CAS : 0000064-19-7
N° EINECS: 200-580-7

Classification: C  - R35,R10
GHS Classification:
  Skin Corrosion - Cat. 1A  [H314]
  Eye Damage - Cat.1  [H318]
  Flammable Liquid - Cat. 3  [H226]

>= 20.0 < 30.0%
Benzoic Acid, 2-Amino-,
Methyl Ester
N° CAS : 0000134-20-3
N° EINECS: 205-132-4

Classification: Xi  - R36
GHS Classification:
  Eye Irritation - Cat.2A  [H319]

Revised on : 30-May-2015 / v 6.5
Date of printing :  16-MAR-2016
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Reference :  US          14245366

Page     2  /  10



# Safety Data Sheet

## According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

| | |
|---|---|
| >= 5.0 < 7.5% | Classification: C  - R34 |
| Hexanoic Acid | GHS Classification: |
| N° CAS : 0000142-62-1 | Skin Corrosion - Cat. 1C  [H314] |
| N° EINECS: 205-550-7 | Eye Damage - Cat.1  [H318] |

## 4 FIRST-AID MEASURES

4.1 Description of first aid measures

General information:
As in all cases of potential poisoning, Obtain medical advice immediately.

In case of eye contact:
In the event of contact with the eyes,  irrigate with water for at least 15 minutes; obtain medical advice if irritation persists.

In case of inhalation:
In the event of exposure to vapors, immediately remove from the area to a fresh air environment. Individuals showing evidence of inhalation exposure should be taken to an uncontaminated area. Obtain medical advice immediately.

In case of skin contact:
Remove contaminated clothes. Wash skin with large volumes of water.
If irritation persists, or any sign of tissue damage is apparent, obtain medical advice immediately.

In case of ingestion:
In the event of accidental ingestion, rinse mouth with water. Give up to one tumbler (half pint) of milk or water. Obtain medical advise immediately.
Do not induce vomiting, obtain medical advise immediately.

4.2 Most important symptoms and effects, both acute and delayed

No information available on the product itself.

4.3 Indication of immediate medical attention and special treatment needed

None known.

## 5 FIRE-FIGHTING MEASURES

5.1 Extinguishing media
In the event of fire, adequate extinguishers should be used. Avoid inhalation of smoke and fumes. In case of insufficient ventilation, wear suitable respiratory equipment.
Cool fire exposed containers with water spray.
Extinguishing media: Foam, carbon dioxide or dry chemical.

5.2 Special hazard arising from the substance or mixture
Closed containers may build up pressure if exposed to heat (fire). Vapors form explosive mixtures with air and may travel to a source of ignition and flash back.

5.3 Advice for fire-fighters
No specific advice.

Revised on : 30-May-2015 / v 6.5
Date of printing :  16-MAR-2016
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Reference :  US        14245366

Page      3   / 10

# Firmenich

## Safety Data Sheet

### According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

## 6 ACCIDENTAL RELEASE MEASURES

6.1 Personal precautions, protective equipment and emergency procedures

For non-emergency personnel:
Adequate protective gloves should be worn when handling spillages. No smoking. Avoid naked flames or other potential sources of ignition (eg. electrical equipment).
Avoid skin contamination and inhalation of vapour.
Individual washing routines should be followed after any potential contact.
Ensure adequate ventilation in working areas following accidental releases.

For emergency personnel:
Apply the same recommendations as section 6.1

6.2 Environmental precautions

Do not discharge directly into drains, air, into soil or into the aquatic environment.

6.3 Methods and material for containment and cleaning up

For containment:
Eliminate all sources of ignition.  Leaking containers should be removed to a well ventilated area if possible to do safely.  If not, dike around container to limit spread of spill, leak.  If spill/leak is small, clean up with standard absorbents (sand, vermiculite , etc.). Wear rubber gloves.  Avoid contact with skin. If skin contact occurs, wash liberally with soap and water.  See Section VI above. If large leak/spill, call HAZMAT Team.

For cleaning-up:
Spillages should be disposed of in accordance with Governmental Regulations.

## 7 HANDLING AND STORAGE

7.1 Precautions for safe handling

Avoid contact with skin and eyes.
Wear adequate protective gloves protection and eye/face protection.
No smoking. Avoid any sources of ignition.
Avoid exposing to high temperature during processing.
Do not ingest or apply to the skin as such. Good personal washing routines should be followed.
Maintain adequate local and general ventilation where product is handled.

Protective measures

Keep strict control of dust accumulation to a minimum.Maintain adequate local and general ventilation where product is handled.Avoid any sources of ignition.

Advice on general occupational hygiene

Good personal washing routines should be followed.

7.2 Conditions for safe storage, including any incompatibilities

It is good general practice to store in closed, preferably full, containers away from heat sources, and protected from extremes of temperature. Do not re-use the empty container.
Respect generals rules for compatibility storage.

7.3 Specific end use(s)

Not available at this time.

Revised on : 30-May-2015 / v 6.5
Date of printing :  16-MAR-2016
Reference :  US          14245366
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Page      4   / 10

# Firmenich
## Safety Data Sheet
### According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

## 8 EXPOSURE CONTROLS/PERSONAL PROTECTION

### 8.1 Control parameters

0000064-19-7 : ACETIC ACID (All forms)
National Institute for Occupational Safety and Health (NIOSH) Recommended Exposure Limits (REL) (2010-SEP)
  STEL (1994-JUN) : 15 ppm , 15 minutes (All forms)
  STEL (1994-JUN) : 37 mg/m3 , 15 minutes (All forms)
  TWA (1994-JUN) : 10 ppm , 10 hours (All forms)
  TWA (1994-JUN) : 25 mg/m3 , 10 hours (All forms)

0000064-19-7 : Acetic acid (All forms)
American Conference of Governmental Industrial Hygienists (ACGIH) - Threshold Limit Values (TLV) (1994-SEP)
  STEL (1994-SEP) : 15 ppm , 15 minutes (All forms)
  STEL (1994-SEP) : 37 mg/m3 , 15 minutes (All forms)
  TWA (1994-SEP) : 10 ppm , 8 hours (All forms)
  TWA (1994-SEP) : 25 mg/m3 , 8 hours (All forms)

0000064-19-7 : Acetic acid (All forms)
Occupational Safety and Health Administration (OSHA) (29 CFR 1910.1000 Z-1-A) - Permissible Exposure Limits - 1989 vacated values (1989-MAR)
  TWA (1989-MAR) : 10 ppm , 8 hours (All forms)
  TWA (1989-MAR) : 25 mg/m3 , 8 hours (All forms)

0000064-19-7 : Acetic acid (All forms)
Occupational Safety and Health Administration (OSHA) 29 CFR 1910.1001 to 1910.1048 -  Substance-Specific Standards (1993-JUN)
  TWA (1993-JUN) : 10 ppm , 8 hours (All forms)
  TWA (1993-JUN) : 25 mg/m3 , 8 hours (All forms)

### 8.2 Exposure controls
Avoid exposing to high temperature during processing.
Maintain adequate local and general ventilation where product is handled.

### Appropriate engineering controls
Maintain adequate local and general ventilation where product is handled and dispensed.

### Environmental exposure controls
Not available at this time. Minimize release to the environment.

### Personal protection
Respiratory protection: Breathing of the vapors or dust particles may be hazardous. In the absence of appropriate engineering controls such as spot ventilation, ventilated enclosures, etc., workers should avail themselves of the appropriate NIOSH approved respiratory protection.
Hand protection:  Adequate Protective Gloves should be worn.
Eye protection:  Adequate safety glasses should be used.
Skin protection:  Wear protective clothing, overall if necessary to limit the odour contamination of personal clothing. Individual washing routines should be followed after any potential contact.

Reference : US        14245366

Revised on : 30-May-2015 / v 6.5
Date of printing :  16-MAR-2016
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Page      5   /  10



This Safety Data Sheet cancels and replaces all preceding SDS for this product.

## 9 PHYSICAL AND CHEMICAL PROPERTIES

### 9.1 Information on basic physical and chemical properties

| | |
|---|---|
| Appearance : | LIQUID |
| Colour : | COLOURLESS TO VERY PALE YELLOW |
| Odour : | Characteristic strong odour according to the commercial description of the substance. |
| pH : | Not available |
| Melting point/range (°C) : | Not available |
| Initial boiling point/range (°C) : | Not available |
| Flash point (closed cup) : | = 75 Fahrenheit (= 24 Centigrade) |
| Evaporation rate : | Not available |
| Flammability (solid/gas) : | Not available |
| Upper/lower flammability or explosive limits : | |
| Vapor pressure (At 20°C in mm Hg ) : | |
| Calculated vapor pressure (At 20°C in mm Hg): | 21.8 |
| Vapour density : | Not available |
| Relative density (d 20/20) : | 0.993   - 1.003 |
| Water solubility (20°C) : | Not applicable |
| Partition coef. (n-octanol/water) : | Not applicable |
| Auto-ignition temperature (°C): | Not available |
| Decomposition temperature : | Not available |
| Viscosity : | Not available |
| Explosive properties : | Not available |
| Oxidizing properties : | Not available |
| VOC Content less than: | 75% |

## 10 STABILITY AND REACTIVITY

### 10.1 Reactivity
No reaction known with water.

### 10.2 Chemical stability
Presents no significant reactivity hazard. Normally stable even at elevated temperatures and pressures. Avoid temperatures above or near to the flash point. Not pyrophoric nor reactive with water. Does not undergo explosive decomposition, is shock stable, and is not an oxygen donor. Does not form explosive mixtures with other organic materials. Will not undergo hazardous exothermic polymerization.

### 10.3 Possibility of hazardous reactions
Not known.

### 10.4 Conditions to avoid
Avoid temperatures above or at least 5 °C below flash point for any flammable liquids.

Revised on : 30-May-2015 / v 6.5
Date of printing : 16-MAR-2016
Reference : US          14245366
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Page      6  / 10

# Firmenich

## Safety Data Sheet

According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

Do not heat closed containers.
Avoid contact with oxidizing agents.

10.5 Incompatible materials
Avoid strong oxidizing agents.

10.6 Hazardous decomposition products
Contact with water or storage under recommended conditions for one year should not produce dangerous decomposition products.

## 11 TOXICOLOGICAL INFORMATION

This mixture has not been subjected to toxicological testing as an entity. According to available data on the constituents the health classification criteria are met.

## 12 ECOLOGICAL INFORMATION

This mixture has not been subjected to ecotoxicological testing as an entity. According to available data on the constituents the environmental classification criteria are not met.

## 13 DISPOSAL CONSIDERATIONS

### 13.1 Waste treatment methods
Product: The product should be handled according to the instructions given under sections 6, 7 and 8. Dispose of according to local or national regulations. The product should not be allowed to enter drains or the environment.
Contaminated packaging: Empty packaging should be disposed according to local or national regulations by an approved waste handling

## 14 TRANSPORT INFORMATION

In case of accidental spillage or fire during transport, refer to instructions given under points 5, 6, 7 and 8 above.

UNO

| | |
|---|---|
| UN-No: | 2920 |
| Proper Shipping Name: | CORROSIVE LIQUID, FLAMMABLE, N.O.S. (ACETIC ACID;ETHYL PROPIONATE) |
| Class: | 8(3) |
| Packing Group: | II |

Land transport (ADR/RID)

| | |
|---|---|
| UN-No: | 2920 |
| Proper Shipping Name: | CORROSIVE LIQUID, FLAMMABLE, N.O.S. (ACETIC ACID;ETHYL PROPIONATE) |
| Class: | 8(3) |
| Packing group: | II |

Sea transport (IMDG-Code)

Revised on : 30-May-2015 / v 6.5
Date of printing : 16-MAR-2016
Reference : US        14245366                                    Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Page      7   / 10

# Firmenich

## Safety Data Sheet

### According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

| | |
|---|---|
| UN-No: | 2920 |
| Proper Shipping Name: | CORROSIVE LIQUID, FLAMMABLE, N.O.S. (ACETIC ACID;ETHYL PROPIONATE) |
| Class: | 8(3) |
| Packing group: | II |

Air transport (ICAO-IATA)

| | |
|---|---|
| UN-No: | 2920 |
| Proper Shipping Name: | CORROSIVE LIQUID, FLAMMABLE, N.O.S. (ACETIC ACID;ETHYL PROPIONATE) |
| Class: | 8(3) |
| Packing group: | II |

## 15 REGULATORY INFORMATION

15.1 Safety, health and environmental regulations/legislation specific for the substance or mixture:

**NFPA Hazard Classification**
| | |
|---|---|
| Health: | 2 |
| Flammability: | 3 |
| Reactivity: | 0 |

This mixture contains no toxic chemical or chemicals subject to reporting requirements of Section 313 of Title III of the Superfund Amendements and Reauthorization Act of 1986 and 29 CFR Part 1910.1200.

15.2 Chemical Safety Assessment

No data available at this time.

## 16 OTHER INFORMATION

Revisions
01-Dec-2010: Version 6.1 - First version validated for publication
04-May-2012: Version 6.2 - Updates to sections 1, 2, 3, 8.3, 11, 12, 16.
20-Apr-2013: Version 6.3 - Updates to sections 1, 2, 3, 8.1, 14, 16.
07-July-2014: Version 6.4- Updates to section 2, 3, 14, 16.
30-May-2015: Version 6.5- Updates to section 2, 3, 7, 8, 9,13,14,16

Key literature references
RIFM database
OECD SIDS
EU IUCLID
Supplier information

Full text of phrases used under section 2

| | |
|---|---|
| S16 | Keep away from sources of ignition - No smoking. |
| S26 | In case of contact with eyes, rinse immediately with plenty of water and seek medical advice. |

Revised on : 30-May-2015 / v 6.5
Date of printing : 16-MAR-2016
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR
Reference : US        14245366
Page        8   / 10



# Safety Data Sheet

According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

| | |
|---|---|
| S36/37/39 | Wear suitable protective clothing, gloves and eye/face protection. |
| S45 | In case of accident or if you feel unwell, seek medical advice immediately (show the label where possible). |

| | |
|---|---|
| H226 | Flammable liquid and vapour. |
| H314 | Causes severe skin burns and eye damage. |
| H318 | Causes serious eye damage. |

| | |
|---|---|
| P210 | Keep away from heat/sparks/open flames/hot surfaces. No smoking. |
| P260 | Do not breathe dust/fume/gas/mist/vapours/spray. |
| P264 | Wash thoroughly after handling. |
| P240 | Ground/bond container and receiving equipment. |
| P241 | Use rated explosion-proof electrical equipment. |
| P242 | Use only non-sparking tools. |
| P243 | Take precautionary measures against static discharge. |
| P280 | Wear protective gloves/protective clothing/eye protection/face protection. |
| P301+P330+P331 | IF SWALLOWED: rinse mouth. Do NOT induce vomiting. |
| P303+P361+P353 | IF ON SKIN (or hair): Remove immediately all contaminated clothing. Rinse skin with water/shower. |
| P304+P340 | IF INHALED: Remove victim to fresh air and keep at rest in a position comfortable for breathing. |
| P305+P351+P338 | IF IN EYES: Rinse cautiously with water for several minutes. Remove contact lenses, if present and easy to do. Continue rinsing. |
| P310 | Immediately call a POISON CENTER or doctor/physician. |
| P370+P378 | In case of fire: Use appropriate fire extinguishers for fire control. |
| P363 | Wash contaminated clothing before reuse. |
| P403+P233 | Store in a well-ventilated place. Keep container tightly closed. |
| P405 | Store locked up. |
| P235 | Keep cool. |

Full text of phrases used under section 3

| | |
|---|---|
| H226 | Flammable liquid and vapour. |
| H314 | Causes severe skin burns and eye damage. |
| H318 | Causes serious eye damage. |
| H319 | Causes serious eye irritation. |

| | |
|---|---|
| R10 | Flammable. |
| R34 | Causes burns. |
| R35 | Causes severe burns. |
| R36 | Irritating to eyes. |
| R38 | Irritating to skin. |
| R51/53 | Toxic to aquatic organisms, may cause long-term adverse effects in the aquatic environment. |

**We believe that the information contained herein is current as of the date of this Safety Data Sheet. Since the use of this information and the conditions of use of the product are not within the control of Firmenich, it is the user's obligation to determine conditions of safe use of the product.**

Revised on : 30-May-2015 / v 6.5
Date of printing : 16-MAR-2016
Reference : US          14245366
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR



## Safety Data Sheet

According to Regulation HCS 2012

This Safety Data Sheet cancels and replaces all preceding SDS for this product.

**Information contained in this document and related material is proprietary to Firmenich. Disclosure to third parties without the prior written consent of Firmenich except where required by applicable laws and regulations and/or reverse engineering are strictly prohibited.**

Revised on : 30-May-2015 / v 6.5
Date of printing :  16-MAR-2016
Product : 059266 A - ARTIFICIAL GRAPE FLAVOR

Reference :  US        14245366

# Exhibit H

Redacted In Its Entirety

## <u>CERTIFICATE OF SERVICE</u>

I, Eve H. Ormerod, hereby certify that on June 3, 2022, a true and correct copy of the

foregoing document was served on the following counsel via email:

Jack B. Blumenfeld
Megan E. Dellinger
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*/s/ Eve H. Ormerod*
Eve H. Ormerod (No. 5369)